OAKLEY ET AL. *v.* DAVEY ET AL.

(Decided November 5, 1934.)

*Messrs. McKeehan, Merrick, Arter & Stewart, Mr. Carl E. Basler, Mr. Julian H. Weiss, Mr. Ellsworth*

*Jordan, Mr. Robert M. Morgan* and *Mr. Anthony B. Dunlap,* for plaintiffs in error.

*Messrs. Squire, Sanders & Dempsey,* for defendants in error.

MONTGOMERY, J. The question for determination is the proper construction of Section 10503-4, General Code (114 Ohio Laws, 339), sub-division 8, as applied to the following facts:

The testator, William Davey, Jr., died without issue, never having been married, never having had any brothers or sisters, his parents both being dead, and all four of his grandparents dead. His paternal grandparents had one child additional to the father of the testator, who was also deceased, leaving children and grandchildren. His maternal grandparents had in addition to the mother of the testator seven other children, six of whom were dead, leaving children and grandchildren, and the seventh of whom is one of the plaintiffs in error, Thomas Climo, an uncle of the testator.

Item II of the will of William Davey, Jr., was in the following language:

"Item II. All the residue of my estate, of every kind and description and wherever situate of which I die seized or entitled or over which I have the right of testamentary disposition, shall be distributed to the persons entitled thereto under the laws of descent and distribution of the State of Ohio, in effect at the time of my decease."

It is agreed that the effect of this Item II is to cause the property to descend as though he had died intestate. The estate amounted to approximately $800,000, and the testator died eighteen days after the present Probate Code went into effect.

The Probate Court of Cuyahoga county, first deciding this matter, held that the estate should be di-

vided into eight parts; the descendants of the paternal uncle taking one part, Thomas Climo one part, and the descendants of each of the brothers and sisters of Thomas Climo taking one part. Upon error to the Court of Common Pleas that court reversed the Probate Court, and held that one-half of the estate should go to the relatives on the paternal side and that the other one-half should go to the relatives on the maternal side. Put concretely, the result is that under the decision of the Probate Court Thomas Climo would get one-eighth of the estate, and under the decision of the Common Pleas Court he would get one-fourteenth of the estate. Error is prosecuted to this court by those taking on the maternal side, seeking a reversal of the judgment of the Court of Common Pleas. The question is a simple one, but its determination is not so simple.

It is not necessary to copy herein all the provisions of the statutes of descent and distribution under the present Probate Code.

Section 10503-4, General Code, sub-section 7, is as follows:

"If there be no such brothers or sisters or their lineal descendants, the property in the estate shall pass to the grandparents of the intestate equally, or to the survivor or survivors of such grandparents."

Section 10503-4, sub-section 8, is as follows:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, per stirpes; if none, then to the next of kin of the intestate, per stirpes. There shall be no representation among next of kin."

This latter sub-section is new, not appearing in any statutes of descent and distribution in Ohio prior to the adoption of the Probate Code, and, so far as we know, and apparently so far as counsel know, there is

no provision similar to this to be found in the statutes of any other state.

It is to be observed that by this sub-section the right to take by representation has been extended to lineal descendants of grandparents. Such rights theretofore had not extended beyond the lineal descendants of brothers and sisters.

It might be further observed that Sections 10503-6 to 10503-9, General Code, which in the argument and briefs of counsel were much discussed, and which have been heretofore interpreted by the courts, were not changed by the Probate Code, except that in certain instances the words "lineal descendants" were substituted for the words "legal representatives."

It is contended by counsel for defendants in error that Section 10503-4, sub-section 8, being a new section, must control as against these other sections mentioned, and this argument is prefaced with the assertion that its provisions are utterly inconsistent with the provisions of the later sections. If the preface were justified, and the construction of this sub-section were such as is claimed by counsel for defendants in error, their argument that it must control would be valid. However, we cannot concur with them in their contention, either as to the conflict, or as to the interpretation.

It is a general rule of construction that, if possible, all provisions of an act shall be given effect, and shall be construed as a harmonious whole. This proposition was stated by the Supreme Court in the fourth paragraph of the syllabus in the case of *Spitzer* v. *Stillings, Exr.,* 109 Ohio St., 297, 142 N. E., 365, as follows:

"Where a statute is construed by a court of last resort having jurisdiction, and such statute is thereafter amended in certain particulars, but remains unchanged so far as the same has been construed and defined by the court, it will be presumed that the Legislature was familiar with such interpretation at the time of such

amendment, and that such interpretation was intended to be adopted by such amendment as a part of the law, unless express provision is made for a different construction."

Let us consider the language and punctuation of this Section 10503-4, sub-section 8, which, for convenience, is again copied herewith, to-wit:

"If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, per stirpes; if none, then to the next of kin of the intestate, per stirpes. There shall be no representation among next of kin."

It seems to us that the phrase *"per stirpes"* does not modify the words "grandparent or grandparents", but does modify the word "descendants". It further seems to us that the phrase "of such grandparent or grandparents" also modifies the word "descendants". These two phrases are separated by commas. It would not be possible to place each of them immediately next to the word which they qualify, to-wit, the word "descendants". Of course any noun may have several qualifying phrases, set off by commas, and the physical position of the several phrases means nothing.

The general rules of interpretation of the statutes of descent and distribution are that where all of the descendants are of the same degree of consanguinity to the testator they take in equal shares, *per capita,* regardless of the remoteness of the degree; that where they are of unequal degrees of consanguinity to the testator those who are living and of the nearest degree of consanguinity to the testator take the shares they would take if all the descendants of the same degree were alive; and that the lineal descendants of such deceased take their shares by representation.

To put the proposition in a different way it might be stated that those of the nearest degree, however remote that degree, take in their own right, and not by

representation, such shares as would come to them if all the descendants of the same degree of consanguinity with the testator were living, and that those of a more remote degree of consanguinity take *per stirpes*, or by representation, the shares of their deceased ancestors of the degree of consanguinity represented by living members.

The word ''descendant'' has been, and in our judgment should be, construed to include all those to whom an estate descends, whether it be in a direct or collateral line from the intestate.

This principle was laid down by the Supreme Court of Ohio in the case of *Ewers* v. *Follin,* 9 Ohio St., 327, and has been universally followed in this state.

Counsel in their briefs and argument have referred to various English cases. All of those cited, with one exception, support the contention of plaintiffs in error. Especial attention might be directed to the English case of *Re Dering, Neall* v. *Beale* (1911), 105 L. T. Rep. 404, 1911 W. N., 187, decided in 1911, in which the testator gave property in trust for such of the issue of two deceased aunts as should be living at his decease, such issue to take *per stirpes* and not *per capita.* It appears that on the question of distribution, claims were made similar to the conflicting claims in the instant case. The heirs of one aunt claimed the one-half, on the theory that the aunts were the roots, while the heirs of the other aunt claimed a division *per capita,* on the basis of the children of the aunts, on the theory that the term *''per stirpes''* referred to the issue and not to the two aunts. That court held the estate divisible into a number of shares equal to the number of families of the issue, and further held that the children of the aunts and not the aunts themselves were the *stirpes.*

With propriety do counsel agree that the real question to be decided is, where are the roots? It seems

to us that the rule is and ought to be that in construing bequests to the descendants of named persons who are dead the named persons are not the roots, but that the roots are to be found in the descendants then in being nearest in consanguinity to the named persons.

It seems to us that this sub-section 8 of Section 10503-4, General Code, passes the estate not to the grandparents, but to their lineal descendants, as a class, with the right of representation, and that later sections of this act simply explain and define the manner of dividing an estate among those who take by representation. Consider the several sub-sections under 10503-4, where the question of roots and *stirpes* may be applied. In sub-section 1 the bequest is "to the children of such intestate or their lineal descendants." Similar language is to be found in sub-sections 2 and 3. In sub-section 6 the bequest is "to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants".

In the sub-section, 8, under discussion, the bequest is "to the lineal descendants, if any, of such grandparent or grandparents".

In each instance, the root is not the named person, but the class following the named person, as "children", "brothers and sisters", "lineal descendants, if any, of such grandparent or grandparents".

In other words, it seems to us that the descendants are the class designated, and are the roots, and that the words "of such grandparent or grandparents" are descriptive. The children of the grandparents, in this instance the surviving uncle, constitute the first generation. Representation arises in the second generation, who in this case are the children of the deceased uncles and aunts.

The bequest goes directly to the lineal descendants of the grandparents, and not to, or through, the latter,

for they were all dead prior to the death of decedent and therefore could not take. The grandparents, being dead, are eliminated. This sub-section 8 gives nothing to grandparents. It is effective only when they are all dead. It passes the estate to their lineal descendants, as a class, with the provision that the descendants, as between themselves, shall take *per stirpes,* or by representation.

Consider sub-section 7 of this Section 10503-4, General Code, hereinbefore quoted. It provides that the estate shall pass to the "grandparents of the intestate equally, or to the survivor or survivors of such grandparents." This sub-section shows no intention of dividing the estate one-half to the paternal grandparents and one-half to the maternal grandparents. If the survivor or survivors were upon one side, the whole estate would pass to such survivor or survivors. There is, in our judgment, nothing in either sub-section 7 or sub-section 8 indicating an intention that the estate should be divided equally between the paternal and maternal branches. If such had been the intention, the Legislature might well have stated that one-half should go to the paternal grandparent or grandparents, or their lineal descendants, *per stirpes,* and one-half go to the maternal grandparent or grandparents, or their lineal descendants, *per stirpes.* This was not done. Taking these two sub-sections together, it seems to us clear that such was not the intention.

On the theory that the intention of the testator is to control, if that can be determined, we might, in passing, call attention to the situation in the instant case. Presumably all relatives of the same degree of consanguinity to the testator were equally near and dear to him. Presumably he would not be disposed to discriminate against any of them. Presumably relatives of the same degree of consanguinity would make the same appeal to the testator, whether they were rela-

tives upon the father's side or upon the mother's side. The record in the instant case shows that on the father's side, there are nine cousins who would be takers, seven of whom live in England, and that on the mother's side there are approximately forty who would take, all of whom live in this country, and many of whom live in, or in the vicinity of, the city of Cleveland. It is hardly a fair presumption that the testator, leaving such next of kin, should prefer that the major part of the estate should be distributed to a very few paternal relatives, located, as these are, with consequently relatively small portions to the maternal relatives, with whom he, presumably, had far more intimate contact.

It follows, therefore, that Thomas Climo, maternal uncle of the deceased, being nearest in consanguinity to William Davey, Jr., takes in his own right, and not by representation, one-eighth of the estate, and that all the other parties to this action take *per stirpes* the share of their deceased uncles and aunts who were of the same degree of consanguinity as Thomas Climo.

The judgment of the Common Pleas Court is, therefore, reversed, and the judgment of the Probate Court is affirmed.

One other question is raised on brief by counsel for the heirs of missing heirs, it being contended, in brief, that the lower courts made an erroneous finding as to the order of procedure as to their shares. It is our notion that special proceedings were not necessary; that the heirship could have been determined in this proceeding, and that the heirs of the missing heirs take not from the respective missing heirs, but from the testator direct. However, no separate petitions in error, or cross-petitions in error, were filed in this case, and the Common Pleas Court found that counsel had

agreed upon an entry determining this matter. Hence, this court makes no finding or order in this respect.

*Judgment accordingly.*

RICHARDS and LEMERT, JJ., concur.

Judge RICHARDS, of the Sixth Appellate District, and Judges LEMERT and MONTGOMERY, of the Fifth Appellate District, sitting by designation in the Eighth Appellate District.