PARRETT, APPELLANT, *v.* PAUL ET AL., APPELLEES.

(No. 120—Decided January 26, 1962.)

*Mr. John F. Demuth,* for appellant.

GUERNSEY, P. J.  This is an appeal on questions of law from an action in the Common Pleas Court to construe a devise in a will and for partition of the land passing under the devise.

It appears from the pleadings that one John Majors died testate in 1934 leaving surviving him his spouse, but no relatives by consanguinity closer than cousins.  The plaintiff and eighty-three of the defendants are the lineal descendants of the deceased grandparents of the testator.  None of the defendants named in plaintiff's amended petition joined issue in the Common Pleas Court on the prayer thereof, nor have they appeared in this court either in person or by counsel.

Among other things, the testator provided that the real estate in question should pass to his wife for life and that "all of my full blood and all of the half blood relations shall share alike in the remainder, if any."  The testator's widow died in 1961.

The only error assigned and argued by plaintiff, appellant herein, involves the sole question of whether the lineal descendants of the deceased grandparents of the testator succeed to the title of the devised real estate per stirpes or per capita, the Common Pleas Court having ruled the latter.  No error has been assigned as to any other issue determined by the trial court and this court does not, of course, consider such other issues, except as they may have bearing on the issue to which the appeal pertains.

It is the general rule that the word "relations," when used in a will, means relatives or relations who are heirs or next of kin of the testator, who would take under the statutes of descent and distribution in the absence of an intent appearing in the will to the contrary.

Inasmuch as a will speaks not from the time of its execution but from the time of the death of the testator, the law in force at the time of the testator's death, rather than that existing when the will was executed, or which was thereafter enacted, governs the rights of devisees under the will.  41 Ohio Jurisprudence, 276, Wills, Sections 21 and 22.  The applicable paragraphs of the statutes of descent and distribution, existing at the time of testator's death (114 Ohio Laws, 320, 339, 340), read as follows:

"7. If there be no such brothers or sisters or their lineal descendants, the property in the estate shall pass to the grandparents of the intestate equally, or to the survivor or survivors of such grandparents.

"8. If there be no grandparent or grandparents, then to the lineal descendants, if any, of such grandparent or grandparents, per stirpes; * * *."

The plaintiff and eighty-three defendants are lineal descendants of the deceased grandparents of the testator, being the descendants of five deceased maternal aunts and uncles of testator, and of four deceased paternal aunts and uncles of testator (two of whom were half brothers and sisters and two of whom were full brothers and sisters of testator's father, testator's paternal grandmother having married twice). On the maternal side, the descendants consist of twenty-one living cousins and the descendants of nine deceased cousins of testator. On the paternal side, the descendants consist of eight living cousins and the descendants of ten deceased cousins of testator.

The only reported similar case construing the provisions of Section 10503-4, General Code, as above quoted, is that of *Oakley* v. *Davey*, 49 Ohio App., 113 (motion to certify the record overruled January 16, 1935), of which decision we approve, wherein the court held that sub-sections 7 and 8 of this statute do not provide for equal distribution between paternal and maternal branches, and that:

"According to the general rules of interpreting statutes of descent and distribution, descendants of the nearest degree of consanguinity, however remote, take in their own right such shares as would come to them if all the descendants of the same degree with the testator were living, and those of a more remote degree take *per stirpes*, or by representation, the shares of their deceased ancestors of the degree of consanguinity represented by living members."

Applying that decision to the facts alleged herein, except for any limitation, if any, by reason of the use of the words "full blood," "half blood" and "share alike," the grandparents, uncles and aunts, being deceased, the roots would be the cousins and each of the living cousins would be entitled to an undivided one forty-eighth (1/48) interest in and to the land in question, and the descendants of each deceased cousin would be entitled

to receive their per stirpes share of the undivided one forty-eighth (1/48) interest which would have gone to such deceased cousin, if living.

What is the effect, if any, on such distribution of the words "full blood" and "half blood"? The former term is ordinarily defined in dictionaries as denoting brothers and sisters who descend from the same father and mother and the latter to denote brothers and sisters who have only one parent in common. However, since the testator herein had no brothers or sisters, in order to construe his will to effect his intent, we must abandon this ordinary definition and apply a definition, if any, which will accomplish this end. Although modern judicial decisions seldom define the exact meaning of these terms they are replete with references to cousins, uncles and aunts, of the full blood and of the half blood, and it is apparent that these terms are not necessarily confined in their application to the relationship existing only between brothers and sisters.

Referring to 1 Wendell's Blackstones Commentaries, **194**, we find the following:

"* * * But herein there is no objection (as in the case of common descents) to the succession of a brother, an uncle, or other collateral relation, of the *half* blood; that is, where the relationship proceeds not from the same *couple* of ancestors (which constitutes a kinsman of the *whole* blood), but from a *single* ancestor only, as when two persons are derived from the same father, and not from the same mother, or *vice versa*, * * *"

Also, Blackstone said in his Law of Descents in Fee Simple (1760), at page 46:

"A kinsman of the whole blood is he that is derived, not only from the same ancestor, but from the same couple of ancestors. For, as every man's own blood is compounded of the bloods of his respective ancestors, he only is properly of the whole or entire blood with another, who hath (so far as the distance of degrees will permit) all the same ingredients in the composition of his blood that the other hath."

See, also, *In re Tator's Estate* (1913), 141 N. Y. Supp., 927, and *In re Skidmore's Estate* (1933), 148 Misc., 569, 266 N. Y. Supp., 312.

We are, therefore, of the opinion that the testator intended

the terms "full blood" and "half blood" to be construed with reference to a common single or couple of *ancestors* rather than referring, in the more limited sense, to a common *parent* or *parents*. So construed, all the descendants of the same couple of grandparents of testator are relations of the full blood and those of the same single grandparent only of the testator, *i. e.*, descendants of his paternal grandmother by her second marriage, are relations of the half blood. The use of the terms "full blood" and "half blood" in modification of the word "relations" did not therefore alter or change the "relations" of testator as determined under the applicable provisions of the statutes of descent and distribution.

Does the limitation in the devise that "all of my full blood and all of the half blood relations *shall share alike*" alter the per stirpes descent provided for by statute? We think not. It will be observed that the testator did not say that they would *each* share alike or *equally*. The ordinary meaning of his phraseology, and the meaning which we adopt, is that all his full blood relations should share alike with all his half blood relations, *i. e.*, that there should be no distinction in the right of descent for the reason that one class of his relations is of the full blood and another class is of the half blood. Construing and applying the applicable provisions of the statutes of descent and distribution under the rules of law expressed in the *Davey case, supra* (49 Ohio App., 113), no distinction is made between relations of the whole and half blood, and the relations of the whole blood share alike with the relations of the half blood. Such construction therefore results in effecting the testator's intent.

In our opinion the finding and so much of the judgment of the trial court determining that the plaintiff and each of the first eighty-three defendants named in the caption of plaintiff's amended petition is entitled to a 1/84 part of the premises is erroneous, that such error was prejudicial to the plaintiff, and that the judgment, to such extent, should be, and hereby is, reversed and vacated.

The original papers and transcript of docket and journal entries before us are sufficient to demonstrate the error, but insufficient to show the dates of death of the respective grandparents, aunts, uncles, and deceased cousins of testator, so as

to permit this court to conclusively determine the exact beneficiaries of the devise or the exact shares which they each take. For such reason only, this court does not enter final judgment, but remands the cause to the trial court for such determination in accordance with the foregoing opinion.

*Judgment reversed and cause remanded.*

MIDDLETON and YOUNGER, JJ., concur.