HAMILTON Ex'r. of TAYLOR *vs.* LEWIS, Pub. Adm'r. of Ray County, et al.

1. John Taylor made amongst others, the following provisions in his will: "Sec 7. I leave and bequeath to my grand-son, John Hill, the west half of the north-east quarter of Section 27, Town. 51, Range 29; *also one negro boy named Clark, (son of Nell,) to be given into his possession when he arrives at the age of twenty-one years,* to him and his heirs forever."

Sec. 9. I will that all my personal property of every kind, not otherwise disposed of, be sold as soon as practicable, after my death, on a credit of twelve months, my executor taking bond and approved security; and from the proceeds thereof and the money in hand at my death, I desire that all my just debts be paid, and the balance, if any, to be *equally divided amongst my children, and grand children, each grand child drawing their equal proportion of what their ancestors would have drawn had they have lived.*

Sec. 11. There are yet three negroes not disposed of, to wit: James, Nell, and Tom. It is my will that they be hired by my executor, in the county of Ray, either at public auction or privately, as my executor may think most advisable, every year from my death, until my grand son John Hill, comes to the age of twenty-one years; then it is my will that they be sold, &c. &c., and the proceeds arising from such sale, to be equally divided amongst my children and grand children, as before directed, in the ninth article of this will.

Held,

1. That the legacy mentioned in the 7th article, is a *vested* one; and that the hire of the slave Clark, from the death of the testator, passed with the slave to the legatee: a fund having been otherwise provided for the payment of the debts and expenses.

2. That by the 9th article, the grand children take *per stirpes,* that is the share of the deceased parent.

3. That the sale of the slaves mentioned in the 11th article, and division of the proceeds as therein directed, could not be made until the period at which John Hill would attain to the age of twenty-one years. The postponment being made on account of the condition of a majority of the legatees, the death of John Hill during his minority would not change the period fixed in the will for the sale and division.

## APPEAL FROM LAFAYETTE CIRCUIT COURT.

### STATEMENT OF THE CASE.

The facts of this case as presented by the record and agreed by the parties are as follows, to wit: On the 11th day of August, in the year of our Lord 1842, the said John Taylor made and published his last will and testament, and within a short time thereafter, died.

The provisions of his will in the construction of which the several questions involved in the cause arise, are these:

"Section 7. I leave and bequeath to my grand son John Hill, the west half of the north-east quarter of section twenty-seven, township fifty-one, range twenty-nine; also one negro boy named Clark, (son of Nell) to be given into his possession when he arrives at the age of twenty-one years, to him and his heirs forever.

"Section 9. I will that all my personal property, of every kind, not otherwise disposed of, be sold as soon as practicable after my death, on a credit of twelve months, my executor taking bond and approved security; and from the proceeds thereof and the money in hand at my death, I desire that all my just debts be paid, and the balance, if any, to be equally divided amongst my children, and grand children, each grand child drawing their equal proportion of what their ancestor would have drawn had they have lived."

"Sec. 11. There are yet three negroes not disposed of, to wit: James, Nell and Tom. It is my will that they be hired by my executor, in the county of Ray, either at public auction or privately, as my executor may think most advisable, every year from my death, until my grand son John Hill comes to the age of twenty-one years old; then it is my will that they be sold, and they are to be permitted to choose any master who will give the appraised value of them on that day, if any be there, and if not they are to be sold to the highest bidder, and the proceeds arising from such sale to be equally divided amongst my children and grand children as before directed in the 9th article of this will."

The testator in his life time had issue, five children, of whom three, to wit, Edmond B. Taylor, Obadiah Taylor and Nancy Peak, were living at the time of the death of the testator, and two, to wit, Lydia Hill and Wenney Bright died in the life time of the testator. The said Lydia had been twice married, first to one Gourd, by whom she had issue, Zerinda Spencer and Rebecca Gourd, both mentioned in the will; and secondly, to the plaintiff below, Ephraim Hill, by whom she had issue, the plaintiff below Nancy Cates, wife of the plaintiff below, William Cates and John Hill, mentioned in the foregoing provisions of the will, all four of whom were living at the time of the testator's death. The said John Hill afterwards died an infant and intestate, having survived the said Rebecca Gourd who had died without issue. If the said John Hill had continued to live he would not be twenty-one years old until the first day of January, in the year of our Lord 1854. The said Winney Bright, left issue, Jefferson Bright, Rebecca Bright and Sarah Bright, who were living at the time of the testator's death, and are all mentioned in the will. The said Jefferson Bright is still living, and the said Reuben Bright and Sarah Bright have both died since the death of the testator. Since the death of the testator, and before the commencement of this suit, the said Edmond B. Taylor and Obadiah Taylor have both died, severally leaving issue who are yet living. The said Ephraim Hill is the father, and the other plaintiffs below and Zerilda Spencer are the remaining legal representatives of the said John Hill.

The said Nancy Cates, formerly Nancy Hill, has intermarried with the said William Cates since the death of the testator. The said Nancy Peak is still living. The several slaves mentioned in the 7th and 11th sections of the will are yet living; and the said Nell has had three children since the death of the testator who are likewise still living. All of said slaves are under the direction and control of the defendant below, as executor aforesaid.

24

HAMILTON. Ex'r. of TAYLOR, vs. LEWIS, Pub. Adm'r. of RAY COUNTY, et al.

The plaintiffs below as the legal representatives of the said John Hill, instituted this proceeding in the county court of Ray county, and that court upon the hearing of the cause, made an order directing and requiring the defendant below, as executor of said will and testament to deliver up to the plaintiffs below, as the legal representatives aforesaid, the negro slave Clark, mentioned in the 17th section of said will, and also, to proceed to the immediate sale of the slaves James, Nell and Tom, mentioned in the said 11th section, and to divide the proceeds of such sale, together with the proceeds of their hire, among the children and grandchildren of the testator, in the proportions prescribed in the 9th section. From this order the plaintiff in error appealed to the circuit court of the same county; and afterwards a change of venue was awarded to the circuit court of Lafayette county.

Upon the trial of the cause in the latter court all objection to the parties, to the suit, to the form thereof and to the manner of proceeding therein up to that time were mutually waived and abandoned. It was also then agreed that all the parties in interest had been duly notified of the application. It was also then agreed that the cause should be prosecuted for the purpose of judicially ascertaining and fixing the bequests, rights and interests of the plaintiffs below under the said will, and the time when payment, apportionments, possession and distribution of the same ought to be made by the said executor. The will, which is copied in the record was admitted and read in evidence. Upon this state of case the defendant below, by his counsel, prayed the court to declare the law of said cause to be as follows, to wit:

"1. That although the bequest made to John Hill, by the 7th section of the will in question may have vested in him at the death of the testator, and is therefore transmissible to the legal representatives of such legatee, yet such representatives are not entitled to the possession of such bequest until the arrival of the time at which the said John Hill would be twenty-one years old, if living.

"2. That the 11th section of said will passed no substantive bequest to the said John Hill, claimants under that section connected with the 9th, to which it refers, can only prevail under the direction of the will to divide among the children and grand children of the testator. These sections describe certain classes of persons, to wit: the children and grand children of the testator, among whom the proceeds of the sale of the three slaves, mentioned in said 11th section are to be divided by the executor after said Hill should obtain the age of twenty-one years. The legal instrument of the testator is, that his children and grand children, living at the time at which such division is directed to be made, shall take to the exclusion of all others. John Hill having died before such time, his representatives can take nothing under these sections.

"3. That although there may have been a bequest to the said John Hill, under the said last mentioned sections of said will, yet such bequest was contingent and lapsed by the death of such legatee before the time of vesting had arrived.

"4. That the representatives of the said John Hill, have no right to claim or require a sale of said three negroes, nor a division of the proceeds of such sale, before the time comes at which the said John would be 21 years old, if living.

"5. That the proceeds of the hire of the slaves James, Nell and Tom, mentioned in the 11th section of the said will, occurring since the death of the testator, are not disposed of by the said will."

The court refused to make these several declarations of law in the cause, and each of them; and thereupon the defendant below excepted.

The court then declared the law of the cause, arising from the facts aforesaid, to be for the plaintiffs below, and proceeded to make and render the final order and judgment upon the record, to which the defendant below also excepted. The defendant below then moved for a new trial, which was refused. To the overruling of the said motion the defendant excepted. The cause is in this court by appeal.

HAMILTON, Ex'r. of TAYLOR, vs. LEWIS, Pub. Adm'r. of RAY COUNTY.

EDWARDS, for appellant.

1. Under the 11th section of the will, connected with the 9th, to which it refers, there is no substantive bequest to John Hill, the intestate of the plaintiffs below. If he were still living, and the time for final disposition of the property in question had come, he could only claim under the direction of the executor contained in the will, to make payment or division among the children and grand children of the testator. These are two classes of persons, or as the old lawyers phrase it, *nomina collectira*, within one of which the claimant must bring himself before he can take a dividend. 4 Bac. Abr. 394, 395, 396; Batsford vs. Kebbell, 3 Ves. Junr. 363; Sansbury vs. Read, 12 Ves. Junr. 75.

It is conceded that where the testator gives legacies to his children and grand children generally, these descriptions apply to those *in esse* at the time of the making of the will. 4 Bac. Abr. 341. It is also conceded that where there is no bequest of a sum generally to be divided among a class of persons, those of such class who are in being at the death of the testator, shall take. 4 Bac. Abr. 342. But where a testator gives a legacy to any one not as *persona designata*, but under a qualification or description at any particular time, the person answering such description at that time is the person to claim. And where a fund is directed to be divided at any future time among a class of persons, those of such class who are *in esse* at the time such division is directed to be made, take to the exclusion of the representatives of such as are deceased, and all others. Pemberton vs. Park, 5 Binn. Rep. 607; Lamb vs. Lamb, 8 Watts Rep. 184; Moore vs. Smith, 9 Watts Rep. 403; Gregg vs. Bethea, 6 Port. Rep. 9.

2. If the testator, by these sections, meant children and grand children living at the date of his will or at the time of his decease, and there was a substantive bequest to the intestate of the plaintiffs below, then it is submitted that such bequest was contingent and has lapsed by his death before the time of vesting either in possession or interest. Toller's Law of Executors, 304; 4 Bac. Abr. 393, 394, 395, 396, 401; 2 Williams on Executors, 886; 3 Ves. Junr. 362; 1 Roper on Legacies, 583.

3. If the will passed a legacy, whether vested or contingent to the intestate of the plaintiffs below, then it is argued, that his representatives cannot claim the possession or payment of such legacy, before the time at which he would have been twenty-one years old if living; and this proposition embraces the provision of the seventh as well as of the eleventh section. 4 Bac. Abr. 434; (6 Bac. Abr. by Bouvier, 312, 313); 1 Chit. Black. 430, 1; 2 Mad. Chan. Prac. 13, 14; 2 Pierre William's Rep. 335, 478; Fonblanquis Eq. 602 note; 2 William's Executors 881; 2 Toll, Law of Executors, 313.

4. The proceeds of the hire of the slaves in question, are not disposed of by the will. They belong to the executor, either beneficially or in trust for the next of the kin of the testator. He is not authorised to dispose of the proceeds of such hire with the proceeds of the sale which he is directed to make Toll, Law of Executors, 351 and following; 6 Bac. Abr. "by Bouvier," 302 and following; 1 Chit. Black. 434 and note, (46;) 2 P. Williams, 337.

5. The whole will evinces that the testator postponed the time of distribution of his estate in view of its condition, and for its accumulation under the management of his executor, and not in reference to the condition of the legatees, or any of them.

HAYDEN for appellee.

1. Immediately upon the death of the testator, John Taylor, his grand son, John Hill, became entitled to the slave, Clark, and other property mentioned in the 7th article of the will of the said John Taylor; and to an undivided and vested interest, as a grand child of the testator, in the property specified in the 11th article or section of said will; and upon the death of him, the said John Hill, his legal representatives became entitled to the same.

As to vested legacies, see 1 Roper on Legacies, chap. 10, sec. 2, pp. 376, 377 and following,

and notes of reference there; ib. 414; 3 Ves. 10, 16; 1 Bur. 228, 232; 6 Bacon, 264 Rule, 2d; 216, C 1 and 2, 315, 316, 241, 312, 317, (Bouvier's edition.) See 4 Bac. (Wilson's edition) 393, (letter E, section 2) 394 and following, title "Legacies," as to whom legacies payable at a future time shall be said to be vested or lapsed, the legatee dying before the time of the payment.

As to the description of legatees, see 1 Roper on Legacies, chap. 2, sec. 1, pp. 45, 46, 47, 48, 49, 50, &c., and authorities there referred to.

Of legacies *upon condition*, see 1 Roper on Legacies, 499 to 513 and following.

2. That the provisions in the 7th and 11th articles or sections of the will, fixing the majority of John Hill as the point of time at which he was to receive the possession of the property mentioned therein, and for the sale and division of the property mentioned in the 11th section of the will amongst his children and grand children, as specified in the 9th article of it, was evidently made and designed by the testator for the benefit of John Hill, and for the security of the estate there given him, to be managed and enjoyed at a time when, from the maturity of his age, he would be capable of preserving and increasing it; and that, therefore, there is no reason now existing why his legal representatives should not have the possession and enjoyment of the property, &c., bequeathed him in the will. The rule in equity as to the time of payment of a legacy, is that if the legacy draw interest, or if the payment of it be delayed until the majority of the legatee, or until some fixed point of time after the death of the testator, on account of, and for the interest and benefit of such minor, and not on account of or for the reason that, in the judgment of the testator, his estate could not bear the payment of it earlier. Then, although the legatee should die whilst a minor, or before the time fixed for the payment of it, his legal representatives become entitled to the possession and present enjoyment of the legacies at the time of his death; and the circuit court very properly ordered and decided a distribution of the same amongst the plaintiffs below.

As to what time legacies are to be paid, see 4 Bac. 434, 435, (Wilson's edition,) 1 Strange, 238; Ambl. 588; Green vs. Pigot, 1 Br. Ch. Rep. 105, 106, side paging; 2 Verm. 431; 3 Vesey, 16, Cricket vs. Dolby; 2 Verm. 430, Phillips vs. Phillips.


NAPTON, J., delivered the opinion of the court.

The principal questions in this case depend upon the construction of the 9th article of the will, upon which the 11th article is based. The 9th article directs certain property to be sold for the payment of the testator's debts and "the balance, if any, *to be equally divided amongst his children and grand-children, each grand-child having their equal proportion of what their ancestor would have drawn, had they have lived.*"

We entertain no doubt as to the meaning of this clause. The deposition intended is precisely that which the statute of distributions would have made, had the will been silent. The words children and grand-children are not intended to designate the persons who would take, but those classes are named merely because at the making of the will they embraced all those persons who constituted his heirs at law. It was evidently not the intention of the testator that all his grand-children should take, whether they were living at the death of the testator, or at

the period when the legacy would vest. His grand children, who had parents living at the time when the legacy vested, would not take, although coming within the very words of the will. It could never be supposed for a moment, that the children of O. Taylor and E. B. Taylor, who were the testators grand-children, should take under the 9th clause as well as their fathers, who would certainly take as children of the testator. This results from the last clause of the article, where it is clearly indicated that the grand-children are to take *per stirpes* and not *per capita*. Children and grand-children are mentioned, they being the only persons who would be benefitted by the legacy at the time of the testator's writing; but the grand-children were not to take *per capita*, and would only receive the share of their deceased ancestor; and if the grand-children were also dead, leaving issue, the design was that this issue, although not coming within either designation of children or grand-children, should take the share of the deceased grand-child.

As matters now stand, according to the agreed case in the bill of exceptions, it is of no consequence to determine whether the legacy mentioned in the 11th article of the will be vested or lapsed, so far as the deceased grand-children, John Hill and Rebecca Gourd are concerned. These grand-children left no issue, and their heirs would be the same persons who would take under the statute of distributions, if the legacy be regarded as lapsed. The eleventh clause directed the proceeds of certain sales, after the payment of debts, to be divided among his children and grand-children as before directed in article 9, and according to our views of the proper construction of article 9, this residuum, whether the legacy be considered as vested or lapsed, would take the same direction which the statute of distributions would have given it.

In relation to the legacy mentioned in the 7th article of the will, it is clearly a vested one. The testator gives to his grand-son, John Hill, a slave named Clark, "to be given into his possession when he arrives at the age of twenty-one years—to him and his heirs forever." The delivery of the slave is merely deferred on account of the minority of the legatee. The cases are uniform in regarding such a legacy as vested.

There are several other questions presented by the agreed case, of minor importance to the parties in interest, but really of more difficult solution.

1. Does the hire of Clark, the slave bequeathed to John Hill by the 7th article, go to the heirs of J. Hill, or fall into the mass of the estate to be distributed to those entitled under our act of descents and distri-

butions? As a general rule a legacy only carries interest from the time it is payable. Davis vs. Swan 4 Mass. R. 208. An exception to this rule is, where the legacy is given to a minor whom the testator was under a moral obligation to support, and for whose support no other provision was made in the will. This rule of course applies to minor children, and according to some authorities, it equally embraces grand-children. 14 Serg. and Rawl. 241. No pecuniary legacy was bequeathed to John Hill, but a tract of land and the slave Clark. A fund was provided for raising money to pay off the debts and expenses, and in the surplus of this fund, if any there should be, all those entitled to distribution were to share equally. All the grand-children of the testator, whose parents were dead, were provided for in a similar mode to that made for John Hill, and the whole tenor of the will indicates the disposition of the testator to make as equal a division of his estate as practicable among those who would under the law have been entitled to his bounty. We consider that the hire of a slave would go to the specific legatee of that slave, whenever the interest of a pecuniary legacy, similarly disposed of would go with the principal. As an ample fund was set apart for debts and expenses, we cannot doubt that it was the design of the testator to let the specific legacies to his minor grand-children carry interest, where they were money, and that the hire of the slaves (where they were of a suitable age to be hired) should go with the slaves. We find no objection therefore to the order of the circuit court on this point.

2. What becomes of the hire of the slaves Nell, Tom &c., mentioned in the eleventh section, and in relation to which the will is silent? On this point we can see no possible objection to the order of the circuit court. It is perfectly useless to enquire whether the hire of these slaves would necessarily go with the slaves or their proceeds, under the circumstances. For the testator has, in the 11th section, made the same disposition of this property which our statute of distributions would have made. Whether the hire be considered as disposed of by the same clause which disposes of the slaves, or be regarded as a part of the estate not mentioned in the will, the same result is attained. The order of distribution made by the circuit court was right, under either view of the case.

3. The only question remaining to be considered, is the *time* when the court is authorized to have the slaves mentioned in the 11th article of the will sold, and their proceeds distributed. The rule is, that where the period of payment of a legacy is postponed merely on account of the condition of the legatee and the legatee dies before the period arrives,

the legacy being a vested one, is payable immediately to the heirs of the legatee.   But where a legacy is postponed on account of the condition of the estate, the rule is different.   Here it is not very apparent what design was in the view of the testator in deferring the sale of these slaves until the time when his grand-son John Hill, should attain 21 years. It would seem that accumulation was not his object, since he made no mention of the hire, but only the proceeds of their sale.   It is certain, however, that the payment was not deferred *solely* on account of the infancy of John Hill; for John Hill was not the only legatee under this clause, but all his children and grand-children.   Now three of his children were already heads of families, and so far as they were concerned, John Hill's minority could not influence the legacy designed for them. I should think it most probable, that the period of John Hill's minority was selected as the time for disposing of the slaves and paying over the proceeds, on account of the condition of the majority of the legatees, who were infants, and the year 1854, was selected as the time when the majority of his grand-children, perhaps all of them would be at such an age as the testator thought would enable them to make a judicious use of the legacy.   It is clear that this reason is not removed by the death of John Hill, before attaining twenty-one.   He was one out of seven grand-children coming within the terms of the provision.   We can see no authority then in the circuit court to change the period fixed in the will for the sale of the slaves mentioned in the 11th article.   With this exception we concur in the construction given by that court to the will. The judgment will therefore be reversed, and the cause remanded, with directions that the order be altered in the particular suggested.

Judgment reversed.