**O'REILLY et al. v. JACKSON et al.**

No. 43293.

Supreme Court of Missouri.

Division No. 1.

June 14, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied July 12, 1954.

632

John M. Hadley, Ivon Lodge, St. Louis, for appellants.

C. P. Fordyce, St. Louis, for descendants of Agnes M. O'Reilly, respondents.

Thomas Rowe Schwarz, St. Louis, for E. Berkley Martin, Jr., and others and E. Berkley Martin, Jr., guardian ad litem.

VAN OSDOL, Commissioner.

This is an appeal from a judgment in an action instituted by the testamentary trustees under the will of Edward Martin, deceased, for the construction of the will, particularly the phrase "*per stirpes*" as used by testator in the clause (paragraph 3 of Item Sixth) relating to the distribution of the corpus of the testamentary trust estate.

At the time of trial the property composing the corpus of the trust was estimated to be of the value of approximately $750,000. A decision resolving the adversary contentions of appellants and respondents, distributees, under paragraph 3 of Item Sixth of testator's will, will affect the distribution to several distributees in amounts much in excess of $7500, exclusive of costs. This court has appellate jurisdiction of the case on the ground of the "amount in dispute." Const. Art. V, § 3, V.A.M.S.

Testator was born in Ireland, probably in 1830. As a young man he came to America and finally settled in St. Louis, where in time he became a prosperous businessman, and the owner of downtown St. Louis real estate of substantial value.

Testator executed his will on October 5, 1896, about ten weeks before his death, December 12, 1896.

By Items First and Second of his will, testator made dispositions without significance in an interpretation of the will.

By Item Third, testator gave the residue of his estate to his wife Kate, and to his seven children, Joseph E., Mary Agnes, Claude B., Edward, Annie, John P., and William J., in trust, however.

In Item Fourth testator directed the trustees as to the manner in which they were to organize and proceed, and as to their duties in the management of the trust estate. In this item testator also directed that, as soon as practicable, his trustees were to pay his debts other than those secured by deeds of trust on described real estate.

In Item Fifth the trustees were directed to collect all rentals on his improved real estate, and all other income of his estate (except that his residence and described personalty, such as she might select, were to be given over to his wife Kate, for life, free of any charge on any account for rent, taxes, insurance, repairs, or the like). And out of the net income of the trust estate the trustees were directed to pay his wife $3,000 per year during her life or widowhood, which provision for her and the devise and bequest to her of the residence and personalty above mentioned were to be in lieu of dower. Testator further directed that each of "my said children" should be paid the sum of $1,200 per year, and provided that the rest of the annual income should be applied as rapidly as possible to the reduction and final payment of debts secured by deeds of trust on any of his real estate. It was also directed that when the secured debts were liquidated his trustees were to distribute the net annual income (after deducting the annual provision for his wife during life) to each of his children then living, "an equal share" during their respective lives, and, should "any of my said children be then dead, leaving lawful child or children, or issue, then said child or children or issue,

shall receive the share which would have been paid to the parent, if living." Item Fifth also contained the provision that the respective life interests given to his children were to be free of claims of creditors, and his children were to be without power as individual beneficiaries to sell, assign, pledge, or in any manner anticipate income previous to its receipt by them respectively. The testator also referred to advancements which had been made to four of his children, and "as I wish to equalize the shares of all of my children as nearly as practicable" it was directed that interest at three-fourths of one per cent, quarterly, on such advancements or any advancements testator might thereafter make should be deducted from the income to be received, and the sum of such deductions was to be added in equal portions to the respective shares of all of his children.

By paragraph 1 of Item Sixth testator directed—

"On the death of any of my said children, without lawful children or their descendants, surviving, the share of the deceased in said income shall go to the surviving brothers and sisters, or their descendants, in equal shares, *per stirpes*."

And by paragraph 3 of Item Sixth testator directed—

"When the last of my said children shall have died, the Trust Estate shall cease, and the whole thereof, of whatever it shall consist, shall vest in full ownership free from said Trust, in the descendants of my said children, in equal shares, *per stirpes*, and in default of such descendants, in my right heirs."

In Item Ninth testator said that should any of his said children or their descendants bring an action to set aside or annul his will, the provision in the will made for such child or descendants should be null and void, and the share or shares of the child or children instituting the action should immediately vest in the remaining children or their descendants accepting the will.

In Item Eleventh testator appointed his wife and one of his sons as executors of his will, and requested that they should not be required to give bond as such.

When testator died in 1896 he was survived by the widow and the seven children named in the will. Only the three oldest children, Claude B., Joseph E., and Mary Agnes had then married. These three children then had, respectively, three, four and six children. (One of these thirteen grandchildren was born on the day of, or on the day before, or on the day after testator's death.) Testator's widow Kate, and six of his children, namely, Claude B., Edward, John P., William J., Joseph E., and Annie died after the death of testator and prior to the institution of this action, so that testator's daughter, Mary Agnes, was the sole surviving child of testator when the action was instituted, and at the time of trial. [Mary Agnes had married Robert J. O'Reilly. She, as Agnes M. O'Reilly, was originally a plaintiff-respondent in the instant action, being one of the trustees under the will. And she, a beneficiary under the will, was also joined as a party defendant. While this case was under submission in this court, the death of plaintiff-defendant-respondent Agnes M. O'Reilly, the last of testator's "said children," was suggested. Therefore, the corpus of the trust estate amounting, as stated, to approximately $750,000 at the time of trial, is now ready for distribution. (See again paragraph 3 of Item Sixth).] Testator's son Edward had married after testator's death. Three of testator's children, William J., John P., and Annie died without descendants surviving them.

In appellants' brief it is said (and we shall assume) there are presently living grandchildren of testator, and deceased grandchildren (who are represented by descendants), totaling twenty-one, all descendants of four deceased children of testator as follows, Joseph E., seven; Mary Agnes, eight; Claude B., four; and Edward, two.

The trial court in its decree directed that "the entire principal of such trust shall be

first divided into as many equal shares as may be necessary to provide one share each for the then living grandchildren of the testator, and one equivalent share for the collective benefit of the then living descendants of each grandchild of the testator who is then dead but survived by living descendants; and the trustees shall then divide the share set aside for the descendants of a deceased grandchild into as many equal shares as may be necessary to permit said descendants to take by right of representation the share which their deceased parent would have received if then living." This would result in the division, initially, of the principal or corpus of the trust into twenty-one equal shares. The trial court had found in its conclusions of law that "the stocks or roots of inheritance are to be found in the possible takers (of the corpus of the trust estate) who are of the oldest generation in which there is at least one living member when the trust terminates. Under no circumstances are the stocks or roots of inheritance to be found in the deceased children of the testator." This finding is, in effect, the position of respondents.

Appellants on the other hand contend that under paragraph 3 of Item Sixth the stocks or roots of inheritance should be construed to be testator's children and that the corpus of the trust estate should be divided into as many shares as there were testator's children who left descendants surviving them. This latter view would result in a division of the corpus into four equal shares, each share to be distributed per stirpes among the respective descendants of the four children who are survived by descendants.

The parties, appellants and respondents, agree that descendants of deceased grandchildren will take the share which the grandchild would have received had such grandchild lived to participate in the distribution. In other words, now since the corpus of the trust estate is ready for distribution, the sole ultimate question is whether the corpus is to be divided into twenty-one equal shares or into four equal shares, there being no dispute as to the

further distribution of a particular share once the initial number of shares is determined.

The parties to this appeal have cited a number of cases treating with the technical meaning of the phrase "per stirpes," or legally equivalent expression, when used in the variously worded clauses in the various contexts of wills making dispositions to variously denominated beneficiaries in various circumstances. Some of the cases cited are from other jurisdictions which, in general, support the parties' respective contentions. Among cases cited by appellants are In re Hickey's Estate, Sur., 73 N.Y.S.2d 508; In re Corr's Estate, 338 Pa. 337, 12 A.2d 76. Among those relied upon by respondents are Patchell v. Groom, 185 Md. 10, 43 A.2d 32; In re Samson's Will, 257 N.Y. 358, 178 N.E. 557; In re Title Guarantee & Trust Co., 81 Misc. 106, 142 N.Y.S. 1070, and see id., 159 App.Div. 803, 144 N.Y.S. 889, and 212 N.Y. 551, 106 N.E. 1043; Oakley v. Davey, 49 Ohio App. 113, 195 N.E. 406; Robinson v. Shepherd, 46 Eng.Rep.R. 865; In re Wilson, 24 Law Rep.Ch.D. (1883) 664; Preston v. Cole, 64 N.H. 459, 13 A. 788; Re Dering, 105 Law T.Rep., N.S. 404; In re Alexander, 1 Law Rep.Ch.D. (1919) 371.

See also Gibson v. Fisher, 5 Law Rep. Eq. (1868) 50; Sidey, App., and Perpetual Trustees Estate and Agency Co. of New Zealand, Ltd., and another, Resps., 1944 Law Rep.App.Cas. 194; Bradlee v. Converse, 318 Mass. 117, 60 N.E.2d 345; MacGregor v. Roux, 198 Ga. 520, 32 S.E.2d 289; Third Nat. Bank in Nashville v. Noel, 183 Tenn. 349, 192 S.W.2d 825; In re Claussen's Will, Sur., 29 N.Y.S.2d 348; cases collated in the Annotations, 16 A.L.R. 150, 78 A.L.R. 1415, 126 A.L.R. 182, and 13 A.L.R.2d 1073; and the Missouri cases of Hamilton v. Lewis, 13 Mo. 184; Preston v. Brant, 96 Mo. 552, 10 S.W. 78; Maguire v. Moore, 108 Mo. 267, 18 S.W. 897; Aull v. Day, 133 Mo. 337, 34 S.W. 578; Wooley v. Hays, 285 Mo. 566, 226 S. W. 842, 16 A.L.R. 1.

The examination of many cases confirms the remark that, because of the infinite

variety of expression employed in wills, precedents are of less value in their construction than in many other fields of inquiry. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21.

Respondents correctly assert that "per stirpes" means "through or by roots or stocks, by representation"; that technically one may not take by representation, that is, may not take a share which a deceased ancestor would have taken if living, unless the deceased ancestor himself was a possible taker under the terms of the will. They say further that, in our case, the testator, not by accident but by design, gave to his own children only life estates in the *income* of the trust, and specifically provided that his own children should not share the corpus; that testator realized and knew that his grandchildren would probably be the first possible takers of the corpus; and that he knew that these first possible takers (probably grandchildren) could not take by right of representation or through an ancestor or take the share which the ancestor would have taken if living, for the simple reason that their ancestors took no part of the corpus under the will.

Respondents also point out that the will was drawn by an admittedly capable lawyer who must have used the expression "per stirpes" in its full technical meaning, and that, therefore, we should not give the phrase "per stirpes" a meaning which would require the heads of the stirpes to be found in any generation back of the legatees named in paragraph 3 of Item Sixth, unless there are other parts of the will or other words in the will which clearly indicate such an intention.

As we have said, appellants contend the trial court erred in construing paragraph 3 of Item Sixth to mean that grandchildren and not children of testator were the roots or stocks of inheritance.

Having read testator's will from its four corners and having endeavored to give effect to all its plain provisions, we are unable to entirely concur in either of the theories of interpretation advanced by appellants and respondents. Our conclusions, however, in their result, are in favor of appellants.

As we approach a consideration of the whole will, the first language significant to our problem of interpretation is found in Item Fifth. There testator had directed that each of his children was to be paid a specific sum annually out of the income of the trust estate until certain secured debts had been liquidated, and then the whole of the net income (after deducting the amount of income provided for his wife) was to be distributed to each of his children then living, "an equal share" during their respective lives. He said that, in the event "any of my said children be then dead, leaving lawful child or children, or issue, then said child or children or issue, shall receive the share which would have to be paid to the parent, if living." Thus, in treating with income, the testator directed distribution of the share of a deceased child to the child's child or children or issue. And thus did testator also make the share of income to be received by "said child or children or issue" of a deceased child *equal* to the share of income to be received by each of his surviving children.

Attending now paragraph 1 of Item Sixth—Again treating with income, testator provided that, on the death of "any of my said children" without lawful children or their descendants, surviving, the share of the deceased in said income should go to the surviving brothers and sisters, or their descendants, "in equal shares." Here testator, contemplating the death of a child without children or their descendants, directed that the share of such deceased child, and of subsequently deceased children (who might die without children or their descendants) in turn should go to and in equality of division of the share of income with his surviving child or children, or their descendants. That is, in this paragraph testator by his use of the phrase "in equal shares" was intending that the share of a deceased child, dying without children or their descendants, was to go in equality of share of income among the surviving children and the descendants

(collectively) of each deceased child or children. The distribution of income to such descendants of a deceased child, or children, was to be *"per stirpes."*

[Now we think it interesting to note that testator in Item Fifth and in paragraph 1 of Item Sixth was narrowing the distribution of income to and among and in contemplation of "descendants" in several groups or lines of descent, and that he was disposing in strict equality of shares of income among the several groups as such with no apportionment whatsoever with regard to the number of descendants within the respective groups. Testator contemplated that the corpus of the trust estate should be built up out of income by the payment of secured debts out of income (Item Fifth), the corpus to pass to "the descendants of my said children" when "the last of my said children shall have died." (Paragraph 3 of Item Sixth.)]

As stated, by paragraph 3 of Item Sixth, testator disposed of the corpus of the trust estate in remainder.

We bear in mind that in disposing of income by Item Fifth and by paragraph 1 of Item Sixth, and again in disposing of the corpus in remainder by paragraph 3 of Item Sixth, testator was contemplating the future events of birth, death and consequent survivorship, the cast of many of which events he then could not know. It is true that he could have made disposition of the corpus in remainder in a different manner than he had made disposition of the income. Indeed at the time he could have disposed of the corpus to whom he wished, even to persons entirely unrelated to the beneficiaries of income (so long as the disposition was not in contravention of some positive rule of law). However, the language used by testator in disposing of income is consistent with the view that testator, in disposing of the corpus, intended to recognize the collective descendants of each of his deceased children as a group by the language he (and his capable counsel) used in vesting the corpus by paragraph 3, Item Sixth, "in the descendants of my said children, in equal shares, *per*

*stirpes*, and in default of such descendants, in my right heirs." Whereas in paragraph 1 of Item Sixth testator, in disposing of income to children and descendants of a deceased child or children during the survival of at least one of his children, used the language "shall go to the surviving brothers and sisters, or their descendants," now, in paragraph 3 of Item Sixth, in disposing of the corpus, testator speaks in contemplation of the death of the "last of my said children," and uses the language "shall vest * * * in the descendants of my said children."

If testator had intended to vest the corpus in remainder as urged by respondents, he could have merely said he wished to dispose of the corpus ("When the last of my said children shall have died"), according to the statute of descent and distribution. § 4469 R.S.1889 (now § 468.030 RS Mo 1949, V.A.M.S.); Aull v. Day, supra, 133 Mo. 337, 34 S.W. 578, decided March 10, 1896. Now he knew the effect of the statute, and made disposition of the corpus "in default of such descendants," that is, in default of "descendants of my said children." He directed the corpus in such event should vest in "my right heirs." Consequently it would seem that when he used the language "shall vest * * * in the descendants of my said children, in equal shares, *per stirpes*," he must have intended to vest the corpus otherwise than in accordance with the statute.

Testator had used the phrase "in equal shares" in paragraph 1 of Item Sixth after the words "to the surviving brothers and sisters, or their descendants" and preceding the phrase *"per stirpes"*, and now again, contemplating the death of the "last of my said children", the phrase "in equal shares" is used in the paragraph 3 immediately following "descendants of my said children" and preceding the phrase *"per stirpes."* We cannot see that testator intended to use the phrase "in equal shares" in any other sense in paragraph 3 of Item Sixth than the meaning he intended in paragraph 1 of Item Sixth. We have seen testator wished that "should any of my said children" be dead, the child or chil-

dren or issue of said child should receive the share of income which the parent would have been paid, if living (Item Fifth); and we have seen that testator wished that on the death of "any of my said children" without lawful children or their descendants, surviving, the share of income of deceased was to go to the "surviving brothers or sisters, or their descendants, in equal shares, *per stirpes*." Now, in disposing of the corpus, the change in testator's language from "the surviving brothers and sisters, or their descendants, in equal shares, *per stirpes* (paragraph 1 of Item Sixth)" to "the descendants of my said children, in equal shares, *per stirpes* (paragraph 3 of Item Sixth)" seems a mere transition of expression (not with different dispositive intent as to classification of legatees) made perforce in contemplation of the death of "the last of my said children." So we shall tentatively assume testator intended (by the use of the phrase "in equal shares") that descendants compositely described as "descendants of my said children" were to constitute several groups or lines of descent—descendants (as a group) of each of his "said children" who were survived by descendants—the descendants in each group to receive the corpus "in equal shares" 'with the descendants comprising each of the other groups. It has been said the words importing an equal division may readily and appropriately apply to classes. If there is more than one group or class, a provision for equal distribution may refer to the classes as among themselves, and a per stirpes division within the different groups may be required. 3 Page on Wills, 3d (Lifetime) Ed., § 1074, p. 274, at page 276; 69 C.J., Wills, § 1313, pp. 288–289. See also Third Nat. Bank in Nashville v. Noel, supra, 183 Tenn. 349, 192 S.W.2d 825; In re Corr's Estate, supra, 338 Pa. 337, 12 A.2d 76; MacGregor v. Roux, supra, 198 Ga. 520, 32 S.E.2d 289; In re Claussen's Will, supra, 29 N.Y.S.2d 348; In re Hickey's Estate, supra, 73 N.Y.S.2d 508; 13 A.L.R.2d 1035. In this connection, contrast "in *the descendants of my said children* (our italics), in equal shares, *per stirpes*" (in paragraph 3 of Item Sixth) and " 'shall be di-

vided equally among *all of my descendants* then living per stirpes and not per capita (our italics)' " in the will of Grindall considered in the case of Patchell v. Groom, supra, 185 Md. 10, 43 A.2d 32, 33, cited and greatly relied upon by respondents.

■ According to our assumption (as the cast of survivorship has now been determined at the death of Mary Agnes), it is as if the corpus of the trust estate in remainder had been divided into *four equal parts* and each part given by testator to each of the classes comprising the descendants in the several families of testator's children who died survived by descendants, the distribution to the descendants within the different groups or lines of descent to be *"per stirpes."* We think this is what testator intended. [In Preston v. Brant, supra, 96 Mo. 552, 10 S.W. 78, decided in 1888 (overruled as to another point in Gibson v. Gibson, 280 Mo. 519, at page 530, 219 S.W. 561, at page 564), this court observed that testator had referred to the heirs of his son Henry as a class in the fourth clause of his will, and had referred to the heirs of his daughter Elizabeth as a class in the sixth clause of his will. Having twice referred to these heirs respectively as a class, no reason was perceived why the same words, used by the testator in the third clause of his will, were used in a different sense from the same words used in the fourth and sixth clauses. The disposition of the fund to the objects of testator's bounty treated by testator as a "class" was *per stirpes* as to them. Also consult Restatement, Property, § 301, Comments i. and j., pp. 1649–1651. (See also Restatement, Property, § 300, Comment f., at page 1639, relating to the dual significance of the phrase "per stirpes.")]

Since all of the language of paragraph 3 of Item Sixth would be thus made consistent and significant and would be in harmony with testator's apparent plan as disclosed by the whole of his will as we reread it, we feel justified in saying such was testator's true intent and meaning, and we must give his true intent and meaning

full effect. § 468.620 RSMo 1949, V.A.M. S.

In reaching our decision we have considered the arguments advanced in the parties' briefs. On some of these arguments we believe we should comment in the course of this, our opinion.

Respondents and the trial court have attached significance to the spendthrift clause and to the "in terrorem" clause contained in the will. But we have been unable to give import to these clauses as tending to indicate the intention of testator by the language used with respect to the distribution of the corpus. It would appear that the spendthrift clause was inserted to insure to testator's children the regular flow of income he had provided for them, and that the in terrorem clause applied to any beneficiary. And we think it entirely conjectural to ascribe any particular reason for testator desiring his own children to have income only and their descendants to have the corpus. Likewise, we have been unable to determine from the will as a whole why testator desired the corpus to remain intact until the death of his last surviving child, rather than providing that a proportionate share of corpus go immediately to the descendants of a deceased child upon the death of such child.

Respondents have stressed that, while certain deductions out of income were directed in equalization of advancements (the amounts of these advancements were not established by the evidence, and no complaint is made of the trial court's decree in directing that advancements made in the lifetime of testator were not to be deducted upon distribution of corpus), no adjustment with reference to advancements was directed in disposing of the corpus. This, respondents say, indicates testator intended his grandchildren were to share equally. Of course, testator may not have wished to charge advancements to the descendants of a child. Respondents further say testator knew at least twelve of his grandchildren, and no doubt thought that some of his grandchildren would prob-

ably survive him. They say testator should not be presumed to have discriminated against grandchildren whom he knew (those in existence at the time of his death) in favor of other grandchildren or remote descendants whom he did not know. But testator did not give the corpus to any of his grandchildren as such, and, when he made his will, he did not know the number of the descendants (or their respective parentage or degree of consanguinity to him) who would survive "the last of my said children." Testator even had a regard for the possibility of a "default of such descendants" and made a disposition of the corpus in contemplation of the event of such default. (Paragraph 3 of Item Sixth.)

Appellants contend they are entitled to an allowance for attorneys' fees. The trustees in their petition, as well as the appellants and respondents in their joint answers, requested an allowance for attorneys' fees. No evidence was offered in support of these prayers. At the close of the testimony, there was a discussion concerning attorneys' fees and there seems to have been a tacit agreement that, prior to the entry of a decree, the court would consider this question. The record does not indicate, however, that any further consideration was given it other than the fact that the decree contained a provision that jurisdiction was retained for the purpose of authorizing an allowance to the attorney for the trustees. In appellants' motion for new trial, it was stated, "No objection is raised to an allowance to * * *, attorney for the Trustees; however, such allowance should not preclude allowances to counsel for other defendants, particularly guardians ad litem and their respective counsel." Appellants here contend they are entitled to an allowance for attorneys' fees and that, in any event, the guardians ad litem are entitled to such an allowance.

In the brief of certain respondents, attorneys' fees are not mentioned. In the other respondents' brief, the position is taken that an allowance of any attorneys' fees in this case would be improper.

The trustees instituted this action, but since two of them took opposite views as to the proper construction of the language involved and the third trustee refused to take any position, the attorney for the trustees believed it would be improper for him to file any brief either in the trial court or here. The entire burden of briefing and arguing the case was thus upon the defendants below (some of whom are appellants and others are respondents here).

We are of the opinion that a legitimate question arose as to the construction of the will, which question should be answered in order to enable the trustees to properly distribute the corpus. While it is true that appellants and respondents here, and other defendants below, maintained and advocated their adversary self-interests, nevertheless, they have acted in good faith and in a most beneficial way to assist the trial court and this court to determine the method for distribution prescribed by testator. And while no question is involved in this case which either increases or decreases the corpus of the trust, nevertheless a construction of the will was necessary to enable the trustees to properly distribute the trust estate.

■ Under these circumstances, it would be proper for the trial court, at the same time it determines a reasonable allowance for the attorney for the trustees, to determine and allow a reasonable sum (payable from the principal of the trust) as attorneys' fees for the various attorneys who represented the interests of the several defendants and who, along with those representations, represented the guardians ad litem. In this connection, we point out that the representation of guardians ad litem was integral with the respective representations of the adult parties to the litigation. Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 1135–1139, 225 S.W.2d 745, 752–755.

■ The judgment should be reversed and the cause remanded with directions to enter a decree in accordance with the views herein expressed as to paragraph 3 of Item Sixth and as to attorneys' fees; to retain in the decree the present provisions adjudging that advancements "made by the testator to some of his children during his lifetime are not to be deducted from any of the shares in the distribution of the principal at the termination of the trust"; to adjudge costs against plaintiffs, payment thereof to be made from the principal of the trust estate. The costs of this appeal should be adjudged against plaintiffs as trustees, to be paid from the principal of the trust estate.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.