

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| IN THE MATTER OF:<br>EDWIN MEISSNER TESTAMENTARY<br>TRUST | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. ED103864<br><br>Appeal from the Circuit Court<br>of the City of St. Louis<br><br>Honorable Bryan L. Hettenbach<br><br><br>FILED: September 6, 2016 |

U.S. Bank, National Association ("U.S. Bank") filed a Petition for Instructions regarding whether, upon termination of the testamentary trust created by Edwin B. Meissner ("Testator"), the remaining assets of the trust should be divided into two equal shares between Testator's children, Edwin Meissner, Jr., and Dorothy Meissner Freeman, or into six equal shares among Testator's six grandchildren. Edwin Meissner Jr's son, Wallace Meissner ("Wallace"), and Dorothy's daughter, Elizabeth Freeman Baer ("Elizabeth"), both filed motions for summary judgment, whereupon the trial court entered summary judgment in favor of Elizabeth finding that upon termination of the trust, the remaining corpus was to be divided into two shares. We affirm.

# I. BACKGROUND

The Edwin B. Meissner Testamentary Trust (the "Trust") was created under Clause Three of the Last Will and Testament of Edwin B. Meissner (the "Will"). Originally drafted on December 1, 1947, and modified by codicil in November 1952, the Will named Testator's wife, Edna Meissner ("Edna"); his daughter, Dorothy Meissner Freeman ("Dorothy"); and his son, Edwin Meissner, Jr. ("Bud") as co-trustees of the Trust.

Testator died on September 10, 1956, and was survived by Edna, Dorothy, and Bud. Clause Three of the Will provided that one-half of the residue of Testator's estate was to be distributed to Edna, free from trust, and the remaining half of the estate was to be held in the Trust. The net income of the Trust was distributed equally between Bud and Dorothy as provided by Clause Three of the Will:

> The remainder, if any, of said net income after such payments to my wife . . . shall be equally divided among my said children, Edwin B. Meissner, Jr. and Dorothy Meissner Freeman, provided that they shall be living, but if either or both of them be deceased, then the share of any such decedent shall go instead to his or her descendants, per stirpes.

Dorothy died in 1975 and was survived by two children, Elizabeth and William Freeman ("William"). Since Dorothy's death, Elizabeth and William have each received half of Dorothy's one-half share pursuant to Clause Three's express direction. Following the death of Dorothy and Edna, Bud became the sole trustee of the Trust in 1978. In August 2010, U.S. Bank replaced Bud as successor trustee, and U.S. Bank has remained as the Trust's sole trustee.

The Will stated that the Trust was to continue during the lifetime of Edna, Bud, and Dorothy, and would terminate upon the death of the last surviving of the three beneficiaries. Clause Five directed distribution after termination of the Trust:

> The corpus of said Trust estate then remaining and any undistributed income thereof, after all other proper deductions have been made, shall vest in and be distributed equally among the descendants of my two said children, Edwin B. Meissner, Jr. and Dorothy Meissner Freeman, **the descendants of each said child to take per stirpes**, and if there are no such descendants of either then living, the remainder of said corpus and income shall be distributed directly to those persons who, under the laws of the state of Missouri then in force, would be entitled to receive in distribution my personal property had I died intestate at that time . . . . (emphasis added)

Bud is currently 97 years old and has four children, Wallace Meissner ("Wallace"), Donald Meissner, Edwin B. Meissner, III, and Robert Meissner. Upon Bud's death, the Trust will terminate and the remaining corpus of the Trust is to be distributed in accordance with Clause Five of the Will.

On December 17, 2014, U.S. Bank filed a petition for instructions regarding the proper distribution of the corpus and undistributed income upon termination of the Trust. The petition questioned whether the Trust's corpus was to be divided into two equal shares, one for Dorothy's children and one for Bud's children; or six equal shares, one for each of Testator's grandchildren. Wallace and Elizabeth both filed motions for summary judgment on the petition for instructions. The trial court granted Elizabeth's motion for summary judgment and denied Wallace's motion, finding it was the Will's clear intent to distribute the Trust's corpus in two equal shares between Bud and Dorothy's children per stirpes. This appeal follows.

## II. DISCUSSION

Wallace raises two points on appeal. In his first point, Wallace alleges the trial court erred in granting summary judgment in favor of Elizabeth because the judgment is contrary to the intention of Testator in that the plain language of the residuary provision requires an

interpretation that the remaining principal be divided equally among the six grandchildren of Testator rather than equally between the two children's lineal roots.

Second, Wallace argues that the trial court erred in granting summary judgment because the trial court's distribution per stirpes is contrary to Missouri law in that it does not presume that each member of the class takes an equal share of the legacy per capita. Specifically, Wallace contends that absent a clear provision in the Will, the specified class of grandchildren are entitled to an equal distribution of the corpus and undistributed income.

A. Standard of Review

Appellate review of a trial court's grant of a motion for summary judgment need not defer to the trial court's order, making the review essentially *de novo*. Martin v. City of Washington, 848 S.W.2d 487, 491 (Mo banc 1993). The appellate court must view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993).

B. Testator's Intent

When determining the meaning of a will's provision, "the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." First Nat'l Bank of Kansas City v. Hyde, 363 S.W.2d 647, 652 (Mo. 1962). Absent ambiguity, this intent must be "ascertained from the four corners of the instrument without resort to parol evidence as to that intent." Commerce Bank, N.A. v. Blasdel, 141 S.W.3d 434, 443 (Mo. App. W.D. 2004). Interpretation of a will must consider the "general scheme or intention as shown by the entire document." Mercantile Trust Co. v. Sowell, 359 S.W.2d 719, 723 (Mo. 1962). Further, courts presume that the testator knows and intends the

4

legal effect of the language he uses in his will.  First Nat. Bank of Kansas City v. Danforth, 523 S.W.2d 808, 817 (Mo. 1975).  "The function of the court is to construe the will as written by the testator and not to make or rewrite one . . . under the guise of construction."  Id. at 816.

Specifically, per stirpes distribution is defined as "through or by roots or stocks, by representation."  O'Reilly v. Jackson, 269 S.W.2d 631, 634 (Mo. 1954).  Rather than redistributing equally among the new beneficiary class, per stirpes distribution requires substitute beneficiaries collectively take their shares equal to their deceased ancestor's respective share.  St. Louis Union Trust Co. v. Greenough, 282 S.W.2d 474, 478 (Mo. 1955).

In O'Reilly v. Jackson, 269 S.W.2d 631, 633 (Mo. 1954), the Missouri Supreme Court analyzed a nearly identical will provision and interpreted the testator's intent was per stirpes distribution.  The relevant will provision stated that, upon termination of the Trust, shares vested "in the descendants of my said children, in equal shares, per stirpes, and in default of such descendants, in my right heirs."  Id. at 633.  Similarly, the Trust was initially distributed to Testator's children and, following the death of the Testator's last child, the Trust terminated and was distributed to the children's descendants per stripes.  Id.  The court interpreted the phrase "in equal shares" as merely equal through the lineal lines of Testator's children and not equally among all Testator's grandchildren:  "testator intended (by the use of the phrase 'in equal shares') that descendants compositely described . . . were to constitute several groups or lines of descent."  Id. at 637.

Here, Clause Five of the Will expressly directed the Trust's principal be distributed per stirpes upon termination of the Trust:

> [T]he corpus of said Trust estate then remaining and any undistributed income thereof, after all other proper deductions have been made, shall vest in and be distributed equally among the descendants of my two said children, Edwin B.

5

Meissner, Jr. and Dorothy Meissner Freeman, the descendants of each said child to take per stirpes.

Testator's use of "equally among" merely establishes the lines of descent as his two children, Dorothy and Bud, while the subsequent direction stating "each said child to take per stirpes" further defines the distribution among the children's descendants as per stipes.

In Clause Three, income of the Trust is to be "equally divided among said children . . . provided they shall be living, but if either or both of them be deceased, then the share of any such decedent shall go instead to his or her descendants, per stirpes." Since Dorothy's death, her two children have each received half of Dorothy's one-half share in income pursuant to Clause Three. However, upon termination of the Trust, her children would not receive the undistributed income earned before Bud's death, if distributed per capita. Thus, a per capita interpretation creates a conflict among clauses because Dorothy's children could receive less than their half share provided by Clause Three depending on the procedural timing of distributions at termination of the Trust.

Interpreting Clause Five as a per capita distribution would also contradict Testator's expressed intentions within another portion of Clause Five. Clause Five further provides that if a descendant of either of Testator's children is under the age of 21 at termination of the Will and dies prior to reaching the age of 21, his or her share is to be "in equal shares to the brothers and sisters of said minor." Rather than be distributed equally between all remaining grandchildren per capita, the share remains within the lineal root of the child. Further, this clause reiterates the intent to benefit the children's roots instead of the grandchildren's class as it expressly distributes the income of non-surviving grandchildren per stirpes. Though these clauses distribute different funds from the Trust, a substantially inconsistent interpretation of the distribution completely

6

disregards the general scheme and intention of the entire document because it fails to consider the collateral consequences of inconsistent clauses and disregards the ultimate intent of the Will.

C. Presumption of Per Capita Distribution

Under Section 474.020 (RSMo. 2000), relatives of equal consanguinity to the testator who are distributees of the estate take equal shares. Therefore, when an instrument grants a legacy to members of a specified class, it is presumed that each member of the class takes an equal share of the legacy. Mavrakos v. Papadimitriou, 331 S.W.2d 161, 164 (Mo. App. E.D. 1960). However, a provision showing contrary intention overcomes this presumption and allows for per stirpes distribution rather than per capita. Id. Language to the contrary implies the testator "must have intended to vest the corpus otherwise than in accordance with the statute." O'Reilly v. Jackson, 269 S.W.2d 631, 636 (Mo. 1954).

Though the statutory presumption requires equal distribution of shares between relatives of equal consanguinity, Testator's provision in Clause Five expressly directs his children's descendants take their shares per stirpes. The intestate statute at the time of the Will and codicil's construction also required that the distribution of an estate be equal among relatives of equal consanguinity absent a contrary provision. A directive that uses terms contrary to this intestate distribution eliminates the presumption of per capita distribution because it offers clear intent to distribute differently than the intestate statute. Further, Clause Five also provides distribution identical to the intestate statue as a fall back to the express provision. In the event no descendants survived Testator, the clause provides that "the remainder of said corpus and income shall be distributed directly to those persons who, under the laws of the State of Missouri then in force, would be entitled to receive in distribution my personal property had I died intestate at that time." Interpreting that Testator did not intend per stirpes distribution would be counter to the

7

express terms of the Will and incorrectly imply Testator was unaware of the legal effect of the language employed in the Will because it would create inconsistencies within the Will.

The trial court correctly entered summary judgment in favor of Elizabeth because the express terms, general scheme, and intent of the Will all support an interpretation of per stirpes distribution. Upon termination of the Trust, the corpus and undistributed income should be divided into two equal shares between Dorothy's children and Bud's children. Additionally, Elizabeth's Motion for Attorneys' Fees and Costs on Appeal requests the attorneys' fees and costs associated with this appeal be paid by Wallace pursuant to Section 456.10-1004 (RSMo. Cum. Supp. 2009). Section 456.10-1000 states that "in a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Because Wallace's position was directly refuted by the express language of the Will and Missouri law, we agree that justice and equity require Elizabeth be awarded her attorneys' fees and costs in the amount of $26,656 to be paid by Appellants.

### III. CONCLUSION

The judgment of the trial court is affirmed.

_____
ROY L. RICHTER, Judge

Sherri B. Sullivan, P.J., concurs
Colleen Dolan, J., concurs

8