

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| VICTOR D. LABANTSCHNIG, JR., | ) | No. ED100790 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 11SL-CC02900 |
| | ) | |
| KENNETH H. BOHLMANN, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| DENNIS G. LABANTSCHNIG, | ) | Honorable Thea Anne Sherry |
| | ) | |
| Appellants. | ) | FILED: August 26, 2014 |

## OPINION

Kenneth H. Bohlmann (Trustee) and Dennis G. LaBantschnig (Dennis) appeal from the judgment following an equity suit brought by Victor D. LaBantschnig, Jr. (Victor)[1] against Trustee alleging breach of fiduciary duty under the Victor D. LaBantschnig, Sr. Revocable Living Trust (Trust). We affirm.

### Factual and Procedural Background

On February 10, 1995, Victor LaBantschnig, Sr. (Grantor) created the Trust, subsequently amended, which named Dennis and Victor as sole beneficiaries. The Trust was to be distributed pursuant to the terms of Item Four, which provides the following:

---

[1] For clarity and ease of reading, we refer to the LaBantschnig brothers by their first names throughout this opinion.

After the death of the Grantor, all property then constituting the principal of the trust estate…shall be administered as follows:

(A) The Trustees are directed to pay over, free from trust, to Grantor's son, DENNIS G. LABANTSCHNIG, if living, the sum of Fifty Thousand Dollars ($50,000.00)….

(B) If, at the time of Grantor's death, the property known as and numbered 2951 Finestown Road, St. Louis, Missouri 63129 (the "Residential Real Estate"), is held as part of the trust estate, the Trustees shall employ two (2) qualified appraisers to conduct an appraisal of the Residential Real Estate and the average of the appraised values shall determine the value thereof, provided, however, that if the results of the two appraisals differ by more than twenty percent (20%), the two appraisers shall select a third appraiser to appraise the Residential Real Estate, and the average of the two values which are closest to each other shall determine the value of the Residential Real Estate. When making the appraisal of the Residential Real Estate, however, the appraisers shall exclude from the total value thereof the value of the addition to the detached garage which has been constructed thereon. (Grantor acknowledges that the cost of construction of said addition to the detached garage was paid by Grantor's son, DENNIS G. LABANTSCHNIG, and the value thereof is not to be included in Grantor's estate for purposes of division of the trust estate, as hereinafter provided.) The value of the ground on which the addition to the detached garage is built is, however, to be included in the valuation of the Residential Real Estate.

Item Eleven of the Trust states:

If, at any time, either before or after Grantor's death, either of Grantor's said sons shall, either directly or indirectly, contest the validity of this Trust Agreement, or shall attempt to vacate or change the same, or to alter or change any of the provisions hereof, then such son shall be thereby deprived of any interest hereunder and of any share of the trust estate, and the share of such son shall go to the other of Grantor's said sons.

On April 25, 2010, Grantor died and Trustee became the successor Trustee of the estate, which was valued at $947,147.84 and consisted of real estate as well as certificates of deposit, cash and liquidated stocks. In May 2010, following Grantor's death, Trustee met with both beneficiaries to discuss administration of the estate, including appraisal of the real estate. Trustee proceeded to obtain the two required appraisals, neither of which included the value of the main garage.

On July 19, 2011, Victor brought suit against Trustee alleging breach of

fiduciary duty under the Trust. Victor petitioned the court for an accounting by Trustee, a preparation of a proposed schedule of distribution, removal of Trustee as successor trustee and other relief. Additionally, Victor alleged that Trustee failed to provide proof that the property was properly appraised. Dennis was also named defendant as a necessary party. Trustee counterclaimed that Victor violated the *in terrorem* clause of the Trust thereby forfeiting his rights as beneficiary. Dennis subsequently joined the Trustee in that request but did not file a separate claim.

On June 21, 2013, following a bench trial, the court entered judgment in favor of Victor and determined that the Trustee breached his fiduciary duty in the following respects:

a.   Failure to administer the Trust pursuant to the explicit directions, and to abide by the unambiguous terms of the Trust;
b.   Failure to divide and segregate the Trust assets into two separate trust shares as required after determination of the value of the Finestown property on or about August 13, 2010;
c.   Failure to segregate the Finestown property and then delayed distribution to Dennis until July 2012;
d.   Failure to allocate the Finestown property's regular maintenance as well as expenses for significant repairs and improvements to Dennis's share after August 13, 2010, totaling $43,391.88;
e.   Requiring [Victor] to share in the cost of the Finestown property improvements without a trust directive, thereby failing to administer the Trust in the interest of both beneficiaries;
f.   Failure to allocate the interest income proportionally to Dennis and [Victor];
g.   Failure to provide the beneficiaries with details of the Trustee's fees, accounting fee and attorney's fees for over 15 months;
h.   Improper payment of expenses from the Trust assets including but not limited to, the payment of insurance and personal property tax for vehicles not held by the Trust without inquiry into whether the vehicles were part of the Trust;
i.   Failure for over a year to communicate with and respond timely to [Victor's] inquiries until after Victor retained his own counsel;
j.   Admitted failure by the Trustee to devote sufficient time or attention to the administration of the Trust;
k.   Failure to distribute the Trust in a timely manner without just cause or excuse;
l.   Engaging unnecessary expenses and litigation costs of $38,585.34 through November 21, 2012;
m.   Failure to exercise the requisite skill and care and diminishing the value of the

3

Trust by incurring significant attorneys' fees after the beneficiaries agreed in writing to resolve their dispute and end litigation; (footnote: In April 2012, the brothers reached an agreement on the proposed distribution, but the Trustee refused to approve it because [Victor] would not sign a release of liability for the Trustee).

n.      Failure to preserve [Victor's] share of the Trust in the amount of $65,000.00.

Based on the numerous breaches of Trustee's fiduciary duties, the trial court awarded damages to Victor against Trustee personally.[2] Thereafter, the trial court specifically found the Victor's actions did not violate the *in terrorem* clause in the Trust:

> The Court finds that [Victor's] efforts to force the Trustee to comply with the terms of the Trust, challenging appraisals, and refusing to execute a release did not constitute an attempt to challenge the validity of the Trust or alter or change the terms of the Trust to otherwise violate the terms of Item Eleven.

This appeal follows.[3]

## Standard of Review

In reviewing a court-tried case, we are governed by the principles established in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Betty G. Weldon Revocable Trust v. Weldon, 231 S.W.3d 158, 173 (Mo. App. W.D. 2007). We will affirm the judgment of the trial court unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. Betty G. Weldon Revocable Trust, 231 S.W.3d at 173. We will conduct *de novo* review of questions of law, which include determination of the meaning of a trust instrument, and give no deference to the trial court's judgment in such matters. Id.

Generally, the paramount rule of construction in determining the meaning of a trust provision is to ascertain the grantor's intent at the time of the trust's creation. Id. The grantor's

---

[2] Those findings and damages are not being appealed.
[3] In its Amended Judgment, entered October 17, 2013, the trial court made no amendments to its previous findings in regard to the *in terrorem* clause.

intent must be ascertained primarily from the trust instrument as a whole, and no clause in the trust is given undue preference. Id. The unambiguous terms of a trust will be given effect, and we will not attempt to rewrite an unambiguous trust under the guise of construction. Id. at 174.

Discussion

In their sole point on appeal, Trustee and Dennis argue the trial court erred in finding that Victor did not violate the *in terrorem* clause of the Trust thereby forfeiting his rights as a beneficiary of the Trust. We disagree.

Missouri courts strictly construe no-contest, or *in terrorem*, clauses in wills and trusts, and forfeitures are not favored by the law:

> In determining what constitutes a "contest" or other violation of a no-contest or forfeiture provision, it would seem the facts of the particular case are to be considered, taken into account and applied with a careful regard for the phrasing or language of the no-contest or forfeiture clause; and, having in mind that forfeitures are not favored by the law, a no-contest or forfeiture provision is to be enforced where it is clear that the trustor (or testator) intended that the conduct in question should forfeit a beneficiary's interest.

Cox v. Fisher, 322 S.W.2d 910, 915 (Mo. banc 1959); see also Chaney v. Cooper, 954 S.W.2d 510, 519 (Mo. App. W.D. 1997) (in reviewing applicability of forfeiture provisions in wills, courts are to consider facts of the particular case, and those facts are to be considered and applied with careful regard for phrasing or language of the forfeiture clause, and, having in mind that forfeitures are not favored by the law); see also Tobias v. Korman, 141 S.W.3d 468, 477 (Mo. App. E.D. 2004) (generally unfavored by the law, a no-contest clause is to be enforced where it is clear that the trustor (or testator) intended that the conduct in question should forfeit a beneficiary's interest under the trust (or will)).

Here, the relevant no-contest provision, contained in Item Eleven, states that if a beneficiary shall, "contest the validity of this Trust Agreement, or shall attempt to vacate or

5

change the same, or to alter or change any of the provisions hereof'' then such beneficiary's interest would be forfeited. Under Missouri law, this clause must be strictly construed to determine whether any actions taken by Victor were of such a nature that the Grantor intended forfeiture. We believe they did not.

The record shows that the appraisal process was specifically set forth in the Trust, and that the Trustee did not follow those directions. The Trust clearly provided that the detached garage was to be included in the valuation of the property. Despite the express language of the Trust, both of the appraisers confirmed that Trustee gave them the incorrect instructions regarding the appraisal of the Finestown property and they did not include the garage in their calculations. Moreover, in his testimony Trustee essentially conceded that he did not follow the terms of the Trust in determining the property's value:

> Q    Okay. And you understand that in the appraisals, they're supposed to include the value of the detached garage; is that right?
> A    A value for the detached garage, yes.
> Q    Is supposed to be included?
> A    If they thought it was of value.
> Q    Okay. Let me hand you what's been marked Exhibit 41, which is—and this is a letter to you, and it says,…"At the time of the inspection I was instructed not," in capital letters, "to include the detached parking structure in the appraisal."
> And so that was an incorrect instruction to the appraiser?
> A    (No response.)
> Q    Is that true? You incorrectly instructed the appraiser how to appraise the building?
> A    No. I gave them the instructions that were in the—in the trust.
> Q    Okay. So [the appraiser] is not telling the truth when he says that?
> A    As I recall, we were—Victor, Dennis, myself and the appraisers were all standing outside the garage or outside the house, and for the second time had gone over what the appraiser—what the appraisal was and that the statement was made that the garage was to be excluded.
> Q    That's not what the trust says. Though?
> A    That's not what the trust says.
> Q    And you're the trustee, and you're responsible for getting the correct appraisal on the property; isn't that true?

6

A      That is correct.
Q      And according to the first letter from the first appraiser, you didn't do that?
A      (No response.)
Q      That's all right.  We'll just take no answer to that.  You have no answer.

Similarly, according to the second appraiser, he too was instructed by Trustee contrary to the terms of the Trust: "For purposes of this appraisal, we have been instructed to appraise the subject property without the large masonry detached garage to the rear of the main residence." The appraiser indicated that reappraising the property (in compliance with the terms of the Trust) would be a "new assignment" and would require additional work to provide the analysis. The Trustee never made such a request.

Victor's "challenge" was to the Trustee's appraisals, not a challenge to the Trust itself or its terms but an attempt to ensure that the Trust was executed according to its terms.  The plain language of Item Eleven does not prohibit a beneficiary from questioning a Trustee's execution of the Trust, seeking an accounting or a review of the Trustee's actions, questioning appraisals, or seeking to force action by the Trustee.  It only prohibits an attempt to vacate, change or alter the Trust itself.  When Victor received an independent appraisal, questioned whether Trustee's appraisers had properly appraised the property, and identified the appraisals as a concern in his Petition, he explicitly and repeatedly acknowledged that he wished to ensure that the appraisals were done in accordance with the terms of the Trust.

Furthermore, the record shows that Victor ordered his appraisal before seeing the Trustee's appraisals, for his "own purposes" and that Victor did not bring his appraisal to the Trustee until Trustee specifically asked for it.  At the request of Trustee, following a joint request by Dennis and Victor for the appraisers to "reconsider their methodology," Trustee's attorney sent a letter to the appraisers indicating that they incorrectly excluded the detached

7

garage and asked them to revisit those appraisals: "In your appraisals, it appears that not only did you exclude the addition to the attached garage, but you assumed the entire garage was not there." The record supports Victor's contention that this is was not an independent attack by Victor of the appraisers or the appraisal process but done by the Trustee's own attorney to try to determine if the property had been appraised pursuant to the terms of the Trust, and, if not, what the effect of the error was.

We find no language in the *in terrorem* clause indicating that enforcing one's rights under the Trust would cause a forfeiture. Here, Victor does not ask for any part of the Trust to be altered or changed in any way but only requests that the property be appraised as set forth in the Trust. By its own language, the purpose of the Trust was to divide the Grantor's assets equally between his two sons. Victor brought suit to enforce the terms of the Trust and to require the Trustee to complete and file an accounting and distribute the assets pursuant to the terms of the Trust. Based on the record before us, the trial court correctly determined that Victor's actions to enforce the provisions of the Trust did not violate the terms of the *in terrorem* clause contained in Item Eleven. Point denied.[4]

## Conclusion

The judgment is affirmed.

_____
Mary K. Hoff, Judge

Sherri B. Sullivan, Presiding Judge, and Philip M. Hess, Judge, concur.

---

[4] Victor's request for attorney's fees and costs on appeal is denied.