

# In the Missouri Court of Appeals
# Eastern District

**NORTHERN DIVISION**

| | | |
|---|---|---|
| PAUL ARTHAUD, | ) | No. ED107988 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Circuit Court of |
| | ) | Ralls County |
| vs. | ) | Cause No. 17RL-PR00050 |
| | ) | |
| GORDON ARTHAUD, ET AL., | ) | Honorable David C. Mobley |
| | ) | |
| Appellants. | ) | Filed: May 5, 2020 |

## OPINION

Gordon D. Arthaud ("Dean") and Gordon Arthaud, II ("Gordon, II") (collectively, "Appellants") appeal the trial court's judgment on the action filed by Paul D. Arthaud ("Paul")[1] regarding the Gordon Arthaud ("Grantor") (Dean and Paul's father and Gordon, II's grandfather) Revocable Trust (the "Trust"). Appellants raise three points on appeal. In their first point, Appellants argue that the trial court's judgment was against the weight of the evidence "in that neither Paul nor Dean have the right to demand a distribution of 5% of the principal of the Trust" because Grantor intended Gordon, II to be the only primary beneficiary of the Trust. In their second point, Appellants assert that the trial court's judgment was "against the weight of the evidence and includes errors of law in that, if Paul and Dean are Primary Beneficiaries, the

---

[1] Because the parties have the same surname, we refer to them by their first or middle names to avoid confusion, but intend no familiarity or disrespect.

1

Judgment orders distributions that would exceed 5% of the value of Paul's GST Exempt Trust because Paul already received cash distributions." And in their third point, Appellants contend that the trial court's judgment was "against the weight of the evidence and includes errors of law in that Paul should have been removed as trustee because Paul lacks sufficient skills and experience to serve as trustee, refused to cooperate with Dean and is unable and unwilling to effectively administer the trust[.]"

We affirm the trial court's judgment in part and remand in part.

## I.      Factual and Procedural Background

On April 29, 1996, Grantor executed the indenture establishing the Trust, which was created for the purpose of supporting Grantor's wife, Wilma Arthaud ("Wilma"), and Grantor's children and descendants after Grantor's death. The Trust provided for two factual situations: one where Grantor was survived by Wilma ("Phase I") and one where Wilma predeceased Grantor ("Phase II"). Wilma predeceased Grantor, passing away on September 10, 2002. Grantor thereafter died on June 18, 2008. Thus, Phase I of the Trust never took effect, and Phase II became effective on June 18, 2008, when Grantor passed away.

Pursuant to the terms of the Trust indenture, Paul and Dean were named as trustees during Phase II. Article V of the Trust indenture governed the administration and distribution of the Trust after the occurrence of Phase II, and ordered the creation of two separate sub-trusts at the beginning of Phase II: one for assets that could be claimed as tax-exempt under the generation-skipping transfer tax exemption set by the Internal Revenue Service (the "GST Trust") and one for all assets that were not tax-exempt under the generation-skipping transfer tax exemption (the "Non-GST Trust").[2] Article V(A) established that, at the beginning of Phase II,

---

[2] The Trust indenture explicitly stated that Grantor contemplated and understood that the Non-GST Trust could contain no assets if the total value of the Trust's assets at the beginning of Phase II was less than the amount allowed

2

the Trust was also to be divided into shares among Grantor's children and the descendants of Grantor's children if said child of Grantor predeceased Grantor—referred to by the Trust indenture as "primary shares."[3] Each primary share was to be composed of two sub-shares: one for the generation-skipping assets within the GST Trust allotted to each primary share (the "GST Exempt Trust") and one for the remaining assets within the Non-GST Trust for each primary share (the "GST Non-Exempt Trust"). Article V(B) (entitled "Trusts for Grantor's Children and Certain Descendants of Grantor's Children") thereafter stated that "the term 'Primary Beneficiary' for purposes of this ARTICLE V(B) shall refer to a particular individual descendant of Grantor with respect to whom a GST Exempt Trust or GST Non-Exempt Trust ... was created pursuant to ARTICLE V(A)."

Article V(B)(1) instructed Paul and Dean, in their sole discretion as trustees, to expend the net income and/or principal of a primary beneficiary's individual trust for the support and maintenance of the subject beneficiary's comfort, health, and education, and further allowed Paul and Dean, as trustees, to distribute the net income that was not expended to the subject beneficiary or to add it to the principal of the subject individual trust. Article V(B)(2) thereafter stated that, after a primary beneficiary attained 35 years of age, he had:

> the absolute right and power each calendar year during which such Primary Beneficiary is living at all times during the calendar year and from time to time during such calendar year, to demand and receive a distribution to himself or herself ... from and only from the GST Exempt Trust created with respect to such Primary Beneficiary, provided that in any given calendar year, the aggregate of all distributions made to such Primary Beneficiary and the right to demand such distribution pursuant to this ARTICLE V(B)(2) shall not exceed five percent (5%) of the aggregate value of such GST Exempt Trust as of December 31 of such year in which a demand has been made, valued without reduction for the principal payment(s) made to such Primary Beneficiary from such GST Exempt Trust pursuant to this right to demand and receive of such year.

---

by the generation-skipping transfer tax exemption—causing all of the Trust's assets to be allocated to the GST Trust.

[3] Paul and Dean were Grantor's only children at the time of Grantor's death.

Article V(B)(2) went on to state that, if 5% of the aggregate value of the GST Exempt Trust at issue was less than $5,000.00, the primary beneficiary could make an additional non-cumulative demand from his GST Exempt Trust so that the total amount of all demands equaled $5,000.00. Article VII, which appointed the trustees, went on to provide that "[n]otwithstanding the foregoing appointments of Trustees and Successor Trustees, each descendant of Grantor shall, upon attaining twenty-one (21) years of age, become the sole Trustee of the GST Exempt Trust created with respect to such descendant."

Paul filed his petition asserting claims against Dean on August 28, 2017, and filed an amended petition on March 9, 2018. In his amended petition, Paul asserted four counts arguing that: he was entitled to an annual distribution equaling 5% of the aggregate value of the GST Exempt Trust for 2016 and 2017 because he made such demands for those respective years (Count I); the trial court order an accounting of the Trust (Count II); the trial court should declare what the rights and duties of the parties were as trustees and beneficiaries of the Trust (Count III); and the court should remove Dean as co-trustee of the Trust (Count IV). Dean subsequently filed his answer to Paul's petition, and also asserted counterclaims arguing that the trial court should enter declaratory judgment that Paul and Dean were not entitled to annual distributions from the GST Exempt Trust not to exceed 5% of the GST Exempt Trust's aggregate value (Counterclaim I) and that the trial court should remove Paul as trustee of the Trust (Counterclaim II).

A bench trial was held on the matter on November 5, 2018. At trial, the parties presented exhibits, including the Trust indenture, documents detailing the Trust assets, and documents detailing distributions that the Trust had made, and testimony by Paul, Dean, the attorney who prepared the Trust indenture, and the accountant who prepared the tax returns for the Trust. The

4

evidence showed that, when Grantor (who was predeceased by Wilma) died, the combined value of all of the Trust's assets (three parcels of real property) was less than $2 million—the amount that could be claimed under the generation-skipping transfer tax exemption set by the Internal Revenue Service. Two of the three parcels of real estate that composed the Trust assets were sold and the funds from which were invested pursuant to the terms of the Trust. The investment account funded by the sale of those two parcels was managed by Dean as co-trustee of the Trust, because Dean was experienced in the investment business; shortly before the time of trial, the investment account had a value of $2,669,490.22. The third parcel of real estate, Grantor's and Wilma's residence (the "Arthaud Place"), had not been sold at the time of trial and had been maintained by Paul (who was also residing at the Arthaud Place), as co-trustee of the Trust, since Grantor's death. The Trust assets were managed in such way by Paul and Dean respectively until the two began to disagree as to how the Trust assets should be managed, which led to the present litigation. The evidence also showed that Paul had made demands in both 2016 and 2017 that the Trust distribute amounts to him equaling 5% of his GST Exempt Trust's aggregate value or $5,000 if said amount was less than $5,000, and that the Trust had made distributions to Paul and Dean in the amounts of $13,456 in 2016 and $15,146 in 2017. Further, evidence was also presented showing that the Arthaud Place was appraised at $544,500 at the time of Grantor's death in 2008, but had not been appraised since.

The trial court entered its judgment on March 6, 2019. Relevantly, the trial court found that, pursuant to the terms of the Trust indenture, Phase II began at the time of Grantor's death, and all of the Trust's assets were distributed to the GST Trust (and the GST Trust was the only trust in existence) at the time of Grantor's death because said assets were valued at less than $2 million (the generation-skipping transfer tax exemption amount). The trial court concluded that,

5

per Article V(B) of the Trust indenture, Paul and Dean were "primary beneficiaries" of the Trust and, pursuant to Article V(B)(2), were entitled to annual distributions not to exceed 5% of the aggregate value of the Trust assets or $5,000 if 5% of the aggregate value was less than $5,000, as argued by Paul in Count I of his amended petition. Relatedly, the trial court found that Paul had made such demands pursuant to Article V(B)(2) in both 2016 and 2017. The trial court further found that, since Grantor's death, Paul and Dean had been acting as co-trustees with "a rather delineated assignment of duties," as Paul had maintained the Arthaud Place and Dean had managed the investment account containing the Trust's funds and helped prepare the Trust's tax returns. However, the court concluded that, pursuant to Article VII of the Trust indenture, Paul and Dean were to become the sole trustees of their own respective GST Exempt Trusts at the time they turned 21 years old. The trial court therefore ordered that Paul and Dean (as co-trustees of the Trust) pay Paul 5% of the aggregate value of the Trust's assets (including the appraised value of the Arthaud Place) for both 2016 and 2017 and pay Dean 5% of the aggregate value of the Trust's assets for 2017; that "[a]s soon as reasonably possible after the payment of the proceeds [(from 2016 and 2017)], [Paul] and [Dean], as co-trustees, shall divide the remaining trust assets into two separate trusts" to create a GST Exempt Trust for each primary beneficiary; and that Paul and Dean would each be the sole trustees of their own respective GST Exempt Trusts.

Subsequent to the trial court entering its judgment, Dean filed his motion for a new trial and, in the alternative, motion to amend and modify the judgment. The trial court thereafter entered its order amending judgment and entering final judgment on June 11, 2019, in which the court denied Dean's motion for a new trial, but amended its findings and conclusions regarding the annual distributions that it ordered Paul and Dean, as trustees, to make to them individually

6

as beneficiaries of the Trust. Specifically, the court clarified that the annual distributions to which Paul and Dean were entitled under Article V(B)(2) were not to exceed 5% of the aggregate values of their respective GST Exempt Trusts for the years that Paul and Dean made such demands, as opposed to 5% of the aggregate value of the entire Trust. The court also amended its orders to instruct Paul and Dean, as trustees, to: "immediately pay to [Paul] 5% of the aggregate value of [Paul's] separate Trust as of December 31, 2016"; "immediately pay to [Paul] 5% of the aggregate value of [Paul's] separate Trust as of December 31, 2017"; and "immediately pay to [Dean] 5% of the aggregate value of [Dean's] separate Trust as of December 31, 2017."

This appeal follows.

## II.      Standard of Review

In reviewing a court-tried case, we will affirm the trial court's judgment "if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Brown v. Brown,* 530 S.W.3d 35, 40 (Mo. App. E.D. 2017) (citing *In Estate of McKenna,* 500 S.W.3d 850, 855 (Mo. App. E.D. 2016)); *see also Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We review *de novo* questions of law, such as the interpretation of a trust instrument. *Labantschnig v. Bohlmann,* 439 S.W.3d 269, 273 (Mo. App. E.D. 2014).

## III.      Discussion

Appellants raise three points on appeal. In their first point, Appellants argue that the trial court's judgment was against the weight of the evidence "in that neither Paul nor Dean have the right to demand a distribution of 5% of the principal of the Trust" because Grantor intended Gordon, II to be the only primary beneficiary of the Trust. In their second point, Appellants

7

assert that the trial court's judgment was "against the weight of the evidence and includes errors of law in that, if Paul and Dean are Primary Beneficiaries, the Judgment orders distributions that would exceed 5% of the value of Paul's GST Exempt Trust because Paul already received cash distributions." And in their third point, Appellants contend that the trial court's judgment was "against the weight of the evidence and includes errors of law in that Paul should have been removed as trustee because Paul lacks sufficient skills and experience to serve as trustee, refused to cooperate with Dean and is unable and unwilling to effectively administer the trust[.]"

"In determining the meaning of trust provisions, the paramount rule of construction is that the grantor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." *Brown,* 530 S.W.3d at 41 (quoting *O'Riley v. U.S. Bank, N.A.,* 412 S.W.3d 400, 406 (Mo. App. W.D. 2013)). Unless the trust instrument is ambiguous, the grantor's intent is determined from the four corners of the trust document. *Thompson v. Koenen,* 396 S.W.3d 429, 437 (Mo. App. W.D. 2013); *In Matter of Edwin Meissner Testamentary Trust,* 497 S.W.3d 860, 863 (Mo. App. E.D. 2016). "A grantor is presumed to know and intend the legal effect of the language he uses in the trust." *Brown,* 530 S.W.3d at 41; *see also Simon v. Myers,* 570 S.W.3d 103, 108 (Mo. App. W.D. 2018). Where the language of a trust instrument is clear, it must stand as written. *Brown,* 530 S.W.3d at 41; *In Matter of Edwin Meissner Testamentary Trust,* 497 S.W.3d at 863.

In this case, the Trust indenture clearly establishes that Paul and Dean are the only primary beneficiaries of the Trust during Phase II, which began when both Grantor and Wilma were deceased. First, it should be noted that Article V(B) is entitled "Trusts for Grantor's Children and Certain Descendants of Grantor's Children," and thereafter makes numerous references to "Child's Trust" that clearly indicate that the sub-trusts created under that article are

specifically for the benefit of Grantor's children. Article V(B) of the Trust indenture goes on to explain that "the term 'Primary Beneficiary' for purposes of this ARTICLE V(B) shall refer to a particular individual descendant of Grantor with respect to whom a GST Exempt Trust or GST Non-Exempt Trust ... was created pursuant to ARTICLE V(A)." Article V(A) of the Trust indenture established that, at the beginning of Phase II, the Trust was to be divided into primary shares "so that each child of Grantor who is living at the beginning of Phase II shall have one share created with respect to each such living child, and each child of Grantor who is not living at the beginning of Phase II but who has descendant(s) living at the beginning of Phase II shall have one share created with respect to each such deceased child," and that each primary share would be composed of a GST Exempt Trust and a GST Non-Exempt Trust (if needed). The plain language of the Trust indenture unambiguously defines who constitutes a "primary beneficiary" and clearly states that Grantor's children were to be the only primary beneficiaries of the Trust in Phase II, unless a child of Grantor predeceased him, in which case that child's descendants would be primary beneficiaries. Thus, as Paul and Dean were Grantor's only children at the time of Grantor's death and both survived Grantor, they were the only primary beneficiaries under the terms of the Trust indenture at the beginning of Phase II. Because we are able to determine from the four corners of the Trust indenture, see *In Matter of Edwin Meissner Testamentary Trust,* 497 S.W.3d at 863, that only Paul and Dean were "primary beneficiaries" at the beginning of Phase II, Appellants' argument that Gordon, II was intended to be the only primary beneficiary of the Trust such that neither Paul nor Dean is entitled to an annual distribution under Article V(B)(2) is unavailing. Appellants' Point I is therefore denied.

Further, we find that Appellants' argument raised in their Point III has been disposed of by the part of the trial court's judgment that we affirm. Appellants assert in their Point III that

Paul should have been removed as trustee of the Trust for various reasons. In its judgment, the trial court specifically ordered that, after paying the aforementioned annual distributions to the parties that they demanded and were entitled to under Article V(B)(2) for 2016 and 2017, Paul and Dean, as trustees, "shall divide the remaining trust assets into two separate trusts named the Paul D. Arthaud GST Exempt Trust and the Gordon D. Arthaud GST Exempt Trust, respectively, and the Trustees shall convey an undivided one-half interest in the Trust real estate to each such trusts and that the Trustees further transfer 50% of the remaining Trust assets to each of such Trusts," and "[t]he Trustee of the Paul D. Arthaud GST Exempt Trust shall be Paul D. Arthaud and the Trustee of the Gordon D. Arthaud GST Exempt Trust shall be Gordon D. Arthaud." The trial court correctly ordered that the remaining Trust assets (all of which fell under the generation-skipping transfer tax exemption at the time of Grantor's death) be divided into respective GST Exempt Trusts for Paul and Dean, pursuant to Article V of the Trust indenture, and correctly ordered that Paul and Dean would individually serve as trustees of their own respective GST Exempt Trusts, pursuant to Article VII. Thus, per the trial court's judgment and order, Paul was not to serve as trustee of Dean's GST Exempt Trust. As Appellants' argument has been disposed of by the portion of the trial court's judgment that we affirm, Appellants' Point III is denied.

However, Appellants' argument asserted in their Point II requires that we remand the case to the trial court for correction of the court's judgment. The trial court correctly determined (and clarified in its amended judgment) that, pursuant to Article V(B)(2), "if either or both [Paul] or [Dean], individually, demanded before the end of a calendar year that they receive 5% of the aggregate value of the subject GST Exempt Trust as of December 31st of said year, said individual is entitled to receive 5% of the value of such individual's separate Trust as of

10

December 31st…." But, as Appellants contend, the trial court's judgment orders Paul and Dean, as trustees, to distribute amounts equaling 5% of the aggregate values of Paul's GST Exempt Trust to Paul for 2016 and 2017 and 5% of the aggregate value of Dean's GST Exempt Trust to Dean for 2017 *in addition to* the amounts already distributed to them for those years. Specifically, the trial court ordered Paul and Dean, as trustees, to: "immediately pay to [Paul] 5% of the aggregate value of [Paul's] separate Trust as of December 31, 2016"; "immediately pay to [Paul] 5% of the aggregate value of [Paul's] separate Trust as of December 31, 2017"; and "immediately pay to [Dean] 5% of the aggregate value of [Dean's] separate Trust as of December 31, 2017."[4]

Article V(B)(2) of the Trust indenture limits the aggregate of annual distributions made to a primary beneficiary to 5% of the aggregate value of the individual beneficiary's GST Exempt Trust as of December 31st of the subject year. Specifically, Article V(B)(2) states that "the aggregate of **all distributions made to such Primary Beneficiary** and the right to demand such distribution pursuant to this ARTICLE V(B)(2) shall not exceed five percent (5%) of the aggregate value of such GST Exempt Trust as of December 31 of such year in which a demand has been made" (emphasis added). As we find that the annual 5% limit applies to all distributions made to a primary beneficiary, and not just to those made pursuant to demands made under Article V(B)(2), we find that the trial court's judgment erroneously orders Paul and Dean, as trustees, to distribute 5% of the aggregate values of their subject individual GST Exempt Trusts for the years at issue in addition to the amounts already distributed during those years. At trial, evidence was presented that significant distributions were made to Paul and Dean in both 2016 and 2017, but the trial court's orders do not reflect that those amounts already distributed should

---

[4] The trial court did not order Paul and Dean, as trustees, to make a distribution to Dean for 2016, and Dean does not raise that issue on appeal.

be included in the calculation of the ordered amounts totaling 5% of the aggregate values of the respective GST Exempt Trusts for the years at issue.

Thus, Appellants' Point II is granted. On remand, we instruct the trial court to correct its June 11, 2019 order amending judgment and entering final judgment (specifically, paragraph 5 on page 2 of the amended judgment) to order Paul and Dean, as trustees, to: immediately pay amounts to Paul equaling 5% of the aggregate value of his individual GST Exempt Trust as of December 31, 2016, less the amounts already distributed to Paul during that year; immediately pay amounts to Paul equaling 5% of the aggregate value of his individual GST Exempt Trust as of December 31, 2017, less the amounts already distributed to Paul during that year; and immediately pay amounts to Dean equaling 5% of the aggregate value of his individual GST Exempt Trust as of December 31, 2017, less the amounts already distributed to Dean during that year.

## IV.    Conclusion

Based on the foregoing, we affirm the judgment of the trial court in all regards, except for the portions of the judgment that order Paul and Dean, as trustees, to distribute amounts equaling 5% of the aggregate values of Paul's GST Exempt Trust to Paul for 2016 and 2017 and 5% of the aggregate value of Dean's GST Exempt Trust to Dean for 2017 in addition to the amounts already distributed to them for those years. We remand the case to the trial court with instructions to correct its judgment to reflect that amounts should be distributed to Paul for 2016 and 2017 and to Dean for 2017 such that the aggregate annual distributions paid to them for those years equal 5% of the aggregate values of their respective GST Exempt Trusts as of December 31st of those respective years.

_____

Colleen Dolan, Chief Judge

Gary M. Gaertner, Jr., J., concurs.
Philip M. Hess, J., concurs.

13