

# In the Missouri Court of Appeals

# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| IN THE ESTATE OF: MARSHALL O. BUDER, SR., DECEASED. | ) ) ) ) ) ) ) ) ) ) | No. ED110349<br><br>Appeal from the Circuit Court of the City of St. Louis 2122-PR00933<br><br>Honorable Michael F. Stelzer<br><br>Filed: November 22, 2022 |

Howard Weber (Weber) and a nonprofit corporation, Ducks Unlimited, Inc. (DU) appeal

from the trial court's February 21, 2022 Order (February 21 Order), which held that Weber's

request for an accounting and a request by both Weber and DU to appoint a special fiduciary

violate the no-contest clause of the M.O. Buder Revocable Trust dated May 2, 2016, which

would forfeit their beneficial interest in the trust estate. We reverse in part and affirm in part.

## Background

Marshall O. Buder (Decedent) died testate on March 12, 2020. His Last Will and

Testament (Will), created in 2014, was admitted to probate and Letters Testamentary were issued

to his son-in-law, Bruce F. Hilton (Hilton), as personal representative.[1] Decedent also created

---

[1] Thomas Fleming was also named co-personal representative, but declined to serve.

the M.O. Buder Revocable Living Trust Agreement (Revocable Trust) in 2016, which named Hilton as sole trustee of the Revocable Trust.

*The Will Provisions*

Within the Will, Article Six made several specific legacies, including $100,000 to Decedent's longtime friend, Weber. Pursuant to Article Eight, certain real property located in St. Charles County, known as "Whistling Wings Duck Club and Farm," (WWD) was devised to DU, "subject, however, to the terms and provisions of the WHISTLING WINGS DUCK CLUB AND FARM MANAGEMENT TRUST [(Management Trust)] hereinafter set forth." The Will named Hilton as Trustee of the Management Trust. This article of the Will also entrusted Weber to manage and operate WWD, based on his work with Decedent since 1986.

Article Nine set forth the terms and provisions of the Management Trust, including a bequest of $1.5 million to the Trustee. The Management Trust was to provide financial support and management so long as Weber opted to manage and operate the WWD. In the event Weber became unable or unwilling to manage and operate WWD, the Management Trust would terminate and the assets would be distributed. The Management Trust also outlined the rights, powers and duties of the Trustee with respect to the trust estate, and required that the Trustee "shall render to the beneficiary or beneficiaries of the Trust Estate statements of account of his receipts and disbursements" at least semi-annually.

*The Revocable Trust Provisions*

Two years later, in 2016, the Revocable Trust was separately created from the Will containing the Management Trust. Item One (a) provides that "[a]ll of the statutory powers and duties and responsibilities set forth in Missouri Revised Statutes" apply to the Trustee. Item Three gives the trustee, in his sole discretion, authorization to pay Decedent's debts and expenses

to administer his estate and fund the Management Trust.  Item Thirteen contains a "Trust Contest" section, often referred to as a "no-contest clause."

*The Litigation*

On April 30, 2021, Hilton filed a Petition for Construction of Will, pleading that he, as personal representative of the Will, and as Trustee of the Management Trust, was "uncertain as to how the [Management Trust] is to be administered, how the [WWD] is to be operated, who is responsible for the expenses associated with the Real Property, and how any remaining Trust Estate of [the Management Trust] is to be distributed."  Weber and DU were named as respondents.  Hilton's pleading explained that Weber chose to manage and operate the WWD the first twelve months following the death of Decedent, as prescribed in the Will.  However, it operated at a loss as reflected in an accounting, which Hilton attached as an exhibit.  The Management Trust made no provision for payment of expenses associated with the WWD without assets held by the Management Trust, and made no provision relative to expenses regarding the real estate devised to DU subject to the Management Trust.

On July 28, 2021, Hilton also filed a Petition for Construction of Trust, asking the court to construe the Revocable Trust and specifically requesting a determination as to whether the Management Trust "is a beneficiary of the Revocable Trust" and whether, and to what extent, he has discretion to fund or not fund the Management Trust from the Revocable Trust.  This pleading also named Weber and DU as respondents, in addition to Decedent's three daughters, Kelly Buder Hilton, Terry Buder Clark, and Mary Buder Sachs (Daughters).

In response, on September 7, 2021, Weber filed a "safe harbor pleading," pursuant to Section 456.4-420 of Missouri's trusts and estates statutes, which permits an interested person to file a petition for an interlocutory determination on whether a particular claim for relief would

3

trigger the application of a no-contest clause within a trust or otherwise forfeit a person's inheritance.[2] Weber's petition referred to the Revocable Trust's Item Thirteen, the no-contest clause, and asked the court to interpret it with respect to his attached Exhibit 3, which included both an answer to Hilton's Petition to construe the Revocable Trust and certain counterclaims. The counterclaims in Exhibit 3 consisted of three counts: (1) accounting of the Revocable Trust and Management Trust from the Trustee; (2) compel distribution of Revocable Trust and funding of the Management Trust against Trustee; and (3) construe both the Will and Revocable Trust. Relevant to this appeal, Weber's Count I alleged that Weber never received an accounting of the Revocable Trust and of the Management Trust, nor had he received any reports as defined in Section 456.8-813. He requested that Hilton account for all financial transactions during his tenure as Trustee of the Revocable Trust and Management Trust. Both Count I and II sought appointment of a special fiduciary of the Revocable Trust and Management Trust.

The same day, DU also filed its own petition for an interlocutory order pursuant to Section 456.4-420 and attached only an answer to Hilton's petition as Exhibit 1. However, DU's answer not only admitted or denied allegations in Hilton's petition, it also alleged Hilton's petition "presents a conflict between his role as Trustee of the Revocable Trust and his role as Trustee of the [Management Trust]" and required appointment of a special fiduciary.

On September 29, 2021, Decedent's Daughters, including Hilton's wife, filed an answer to Petition for Construction of Will, an answer to Petition for Construction of Trust, and an answer to DU's counterclaim (which was actually filed by Weber and not DU). They asked the

---

[2] Section 456.4-420 was enacted by the Missouri legislature in 2014 to address a procedure in which an interested person can seek to avoid the effect of no-contest clauses in trusts. Upon consideration of the language of the clause, the relationship of the clause to the trust instrument, and the facts of the petition, the circuit court makes a determination that "result[s] in the no-contest clause being enforceable to the extent of the court's ruling." The decision is subject to appeal. Section 456.4-420; *Knopik*, 597 S.W.3d at 193.

court to interpret the Revocable Trust pursuant to its terms, find that the terms of the Will provide for the termination of the Management Trust, determine how any remaining trust or estate assets are to be distributed and who is responsible for the expenses associated with the WWD property, and proceed with closing Decedent's estate. On January 12, 2022, the Daughters also filed their motion in opposition to Weber and DU's petitions for interlocutory orders.

On February 21, 2022, the Circuit Court for the City of St. Louis probate commissioner issued an order regarding the September 7, 2021 Verified Petitions for Determination of the No-Contest clause contained in the Revocable Trust:

> Count I and Count II of the Answer and Counterclaim filed as Exhibit 3 to the *Verified Petitions* filed on September 7, 2021, do violate the "no-contest" clause contained in Item Thirteen of the [Revocable Trust] dated May 2, 2016, and would trigger the forfeiture of any beneficial interest in the Trust Estate for [*Howard] Weber or Ducks Unlimited, Inc.*

(emphasis added). The order only refers to the "Answer and Counterclaim" in Weber's Exhibit 3 as being attached to said "*Verified Petitions*," but makes no mention of DU's answer and request for a special fiduciary. However, the court's order ultimately and unequivocally concluded that neither Weber nor DU's beneficiary interests would be protected by the safe harbor provisions of Section 456.4-420.

Notice of Appeal was filed on February 28, 2022.

**Discussion**

Weber argues two points on appeal. First, he alleges the trial court erred in entering the February 21 Order, finding Weber's Count I for an accounting would violate the no-contest clause, because it erroneously misapplied the law in that the no-contest clause in the Trust does

5

not apply to Weber's claim for an accounting of the Revocable Trust and Management Trust and is not a form of "opposition," "interference," "revocation," or "nullification."

In his second point, Weber alleges the trial court erred in entering the February 21 Order, finding Weber's request for a special fiduciary would violate the no-contest clause, because it erroneously misapplied the law in that the no-contest clause in the Revocable Trust does not apply to Weber's request for a special fiduciary and is not a form of "opposition," "interference," "revocation, or "nullification."

Similarly, DU argues in its sole point on appeal that the trial court erred in entering its February 21 Order, holding that a request to determine a conflict of interest exists and for the appointment of a special fiduciary would violate the no-contest clause and would forfeit DU's interest in the estate because DU merely sought to exercise its statutory rights under the trust code as beneficiary and to enforce the Trustee's duties, which were incorporated into the Revocable Trust and did not contest, oppose, interfere with, or revoke the Revocable Trust itself or any of its terms.

*Standard of Review*

This Court conducts *de novo* review of questions of law, which include determination of the meaning of a trust instrument, and we give no deference to the trial court's judgment. *Labantschnig v. Bohlmann*, 439 S.W.3d 269, 273 (Mo. App. E.D. 2014). "The construction of a legal document, such as a trust, based upon its language is reviewed *de novo*." *Winston v. Winston*, 449 S.W.3d 1, 7 (Mo. App. W.D. 2014).

*Analysis*

No-contest clauses are strictly construed and forfeitures are generally not favored by the law. *Bohlmann*, 439 S.W.3d at 273. However, the no-contest clause in a trust instrument serves

6

a dual purpose: it permits the grantor to dispose of his own property as he sees fit, and it forces "the grave consequence of a forfeiture upon the beneficiary who attempt[s] to frustrate the intention of the donor as expressed in the disposing instrument." *Knopik v. Shelby Invs., LLC,* 597 S.W.3d 189, 191 (Mo. banc 2020), *citing Cox v. Fisher*, 322 S.W.2d 910, 913 (Mo. banc 1959). Even though treated with caution by courts, provisions in wills and trusts instructing that a contest to the validity of the instrument will result in forfeiture have long been held valid and enforceable. *Id.*, *citing Cox*, 322 S.W.2d at 913; *Commerce Tr. Co. v. Weed*, 318 S.W.2d 289, 299 (Mo. 1958); *Rossi v. Davis*, 133 S.W.2d 363, 372 (Mo. 1939); *In re Chambers' Estate*, 18 S.W.2d 30, 37 (Mo. banc 1929).

The issue of whether a beneficiary violates a forfeiture provision of a trust "depends on the facts of the case and the language of the forfeiture provision." *Knopik*, 597 S.W.3d at 191, *citing Cox*, 322 S.W.2d at 914. A grantor is free to dispose of his property as he wishes; thus, the grantor has the power to determine what type of conduct by a beneficiary will forfeit the beneficiary's interest in the instrument. *Knopik*, 597 S.W.3d at 192. This Court must ascertain the grantor's intent, which is clear when the grantor "explicitly and unambiguously describes the type of conduct by a beneficiary that will cause forfeiture." *Id.*

*Accounting*

The trial court determined that Count I of Weber's proposed counterclaim, which asked the court to order the Trustee to provide Weber with an accounting for both the Revocable Trust and the Management Trust, and alleging the Trustee has provided neither, violated the "no-contest" clause contained in Item Thirteen of the Revocable Trust and would trigger forfeiture of Weber's beneficial interest in the Trust Estate.

7

Item Thirteen of the Revocable Trust's "no-contest clause" states that if any beneficiaries, whether or not named in this Trust, "shall in any manner whatsoever directly or indirectly contest or interpose objections" to this Trust, its amendments, the Will, or any codicil, then that beneficiary, his or her spouse, and their issue shall be "revoked and become null and void." The clause also requires the same outcome for any beneficiary that

> inaugurate[s], bring[s], institute[s], prosecute[s], conduct[s], take[s] part in, cooperate[s] in, aid[s] in or abet[s] any action or suit of proceeding, or do[es] or cause[s] to be done, or share[s] in doing or cause[s] to be done, any acts or things, for the purpose of contesting, opposing, interfering with, avoiding, impairing, impeaching, setting aside, revoking, invalidating or nullifying this Trust or any Amendment thereto or the probate of Grantor's Wills or any Codicil thereto, or by law.

Weber argues the no-contest clause is inapplicable to his claim for an accounting because Item One of the Revocable Trust specifically applied "[a]ll of the statutory powers and duties and responsibilities set forth in Missouri Revised Statutes" to the Trustee. Weber claims he is an "interested person" in that he is a "beneficiary" of the Revocable Trust and pursuant to Missouri statutes, which require Hilton as Trustee to respond to his request as a beneficiary for information related to the administration of the trust and deliver reports to "permissible distributees" of the trust. Section 456.8-813.

Hilton does not dispute that Weber is an interested person in the Management Trust and is entitled to such an accounting, which was attached to his Petition for Construction of Will, nor does he contest Weber would be entitled to the same if he is a beneficiary of the Revocable Trust. However, Hilton posits there are a number of issues to be decided in the pending litigation before Weber is actually deemed to have standing to demand an accounting of the Revocable Trust. Specifically, Hilton argues Weber is not mentioned in the Revocable Trust, as a beneficiary or otherwise. He further questions whether Weber becomes one if funds are left in

8

the Management Trust when that testamentary trust terminates. We agree these are issues that must be decided before Weber would be entitled to an accounting. However, we disagree with Hilton's assertion that the court's safe harbor ruling is proper in that the request for an accounting is a violation of the no-contest clause.

We find both the request for accounting and the consequent safe harbor request are premature. However, merely seeking an accounting – to which it is undisputed Weber would be entitled if he prevails on the merits of this litigation – does not invoke the terms of the no-contest clause. See *Bohlmann*, 439 S.W.3d at 273 (beneficiary's efforts to require trustee to file accounting pursuant to terms of the trust did not violate no-contest clause where the no-contest clause terms prohibited an attempt to vacate, change or alter the trust itself, not a challenge to the trustee's actions). Similarly, in this case, the no-contest clause does not prohibit a challenge to the Trustee's actions. Moreover, Weber's request does not, "in any manner whatsoever directly or indirectly contest or interpose objections" to this Trust, its amendments, the Will, or any codicil, nor is it, by law, an action "for the purpose of contesting, opposing, interfering with, avoiding, impairing, impeaching, setting aside, revoking, invalidating or nullifying this Trust or any Amendment thereto or the probate of Grantor's Wills or any Codicil thereto, or by law."

In fact, Hilton's petitions to construe both the Revocable Trust and the Will require him, as Trustee, to fulfill his fiduciary responsibilities to all of the beneficiaries, including an accounting. Thus, we find the request for an accounting, as Weber prepares for trial to construe the Revocable Trust, does not cause a forfeiture based on the no-contest provision; however, Weber is not entitled to such an accounting until the court determines he is indeed a beneficiary.

9

Weber's Point I is granted. We reverse the February 21 Order with directions that the trial court enter an order that the request for an accounting does not violate the Revocable Trust's no-contest clause.

*Special Fiduciary*

Weber's second and DU's sole point on appeal contend the trial court erred in its February 21 Order finding the request for a special fiduciary would violate the no-contest clause, because it erroneously misapplied the law in that the no-contest clause in the Revocable Trust does not apply to Weber's request for a special fiduciary in that it is not a form of "opposition," "interference," "revocation, or "nullification." DU further argues its request is merely an exercise of its statutory rights under the trust code as a beneficiary to enforce the Trustee's duties, which were incorporated into the Revocable Trust; thus, this request does not contest, oppose, interfere with, or revoke the Revocable Trust itself or any of its terms. DU also questions whether the February 21 Order applies to this claim because it failed to reference DU's Exhibit 1 and only made findings with regard to Weber's Exhibit 3.

The February 21 Order should have been the end of this specific issue in the probate court once the Notice of Appeal was filed. It was not. Weber and DU filed two motions to stay the proceedings pending appeal, which were denied on April 2, 2022, and again on May 10, 2022. Then on June 10, 2022, the probate court issued another interlocutory order (June 10 Order) and declared the February 21 Order was in error. The June 10 Order permitted DU to proceed without violating the no-contest clause, but not Weber, which created conflicting orders between the two respondents regarding the appointment of a special fiduciary, which is the exact issue both respondents are appealing to this Court from the February 21 Order.

An interlocutory appeal may not stay every trial level proceeding, but it stays the issue or issues involved in the appeal. *Top Craft, Inc. v. Int'l Collection Servs.*, 258 S.W.3d 488, 490-91 (Mo. App. S.D. 2008). Actions taken by the trial court related to those issues during the pendency of the interlocutory appeal are a nullity. *Nicholson v. Surrey Vacation Resorts, Inc.*, 463 S.W.3d 358, 367 (Mo. App. S.D. 2015) (citing *Top Craft, Inc.*, 258 S.W.3d at 491). "The general rule against simultaneous trial/appellate court jurisdiction exists for good reason—we need not even begin to list illustrations why the alternative would be practically unworkable." *Top Craft, Inc.*, 258 S.W.3d at 491. The June 10 Order aptly demonstrates the ensuing confusion that proves the general rule. Thus, we clarify that our review of the February 21 Order in this appeal voids the June 10 Order.

In Missouri, grantors of a trust are "presumed to have known and intended the legal meaning and effect of the language they employed at the time they were executed." *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 444 (Mo. App. W.D. 2004). While Decedent named his three Daughters as beneficiaries of his Revocable Trust, he also named his son-in-law, Hilton, as Trustee. Weber and DU are concerned that Hilton's roles and duties to the Revocable Trust, in addition to the probate estate and the Management Trust create a conflict of interest necessitating the appointment of a special fiduciary.

Weber cites *Morrison v. Asher*, 461 S.W.2d 844, 850 (Mo. App. S.D. 1962), that the burden is on the trustee to show "absence of facts which make for bad faith" where a trustee has failed to follow what the trust instrument directs. He further argues if Decedent wanted the no-contest clause to apply to requests for a special fiduciary, or assertions about conflict of interest and improper decisions, he would have clearly stated that. DU argues *Bohlmann* is instructive in that nothing in the plain language of the no-contest clause prohibited a beneficiary from

11

questioning a Trustee's execution of the Trust, seeking an accounting or a review of the Trustee's actions, questioning appraisals, or seeking to force action by the Trustee. *Bohlmann*, 439 S.W.3d at 273. Moreover, DU claims the no-contest clause here says nothing about a beneficiary seeking to enforce certain rights it possesses or duties a trustee owes under the trust code, but only prohibits beneficiaries from interfering with the Revocable Trust itself.

Neither *Morrison* nor *Bohlmann* support these arguments. Although the *Bohlmann* court held the plain language in the no-contest clause did not prohibit a beneficiary from questioning the trustee or seeking the required accounting, the case here is distinguished from *Bohlmann* in that the plain language of Item Thirteen mandates any interference with the Revocable Trust, its amendments, or the probate of the Will or any codicil shall result in forfeiture. Even though Item Thirteen's no-contest provision does not prohibit a beneficiary from questioning the Trustee, the equally plain language of Item Eight specifically appointed Hilton as successor Trustee to Decedent. Decedent knew and clearly intended when he appointed Hilton, his son-in-law, that he would serve as Trustee of both the Management Trust and the Revocable Trust.[3] By seeking to remove him and appoint a special fiduciary in his place, no matter whether raised as a counterclaim or in a prayer for relief, Weber and DU both seek to "interfere with, modify, or change the Revocable Trust" and rewrite the Trustee provisions of the Trust itself.

Here, as *Morrison* directs, Hilton has met his burden as Trustee to show an "absence of facts which make for bad faith" because he initiated this litigation to ensure he proceeds in good faith to all beneficiaries by filing the petitions to construe the Revocable Trust and Will as

---

[3] Weber points out that Hilton is a circuit judge, and suggests he resign based on Rule 2-3.8, which generally prohibits judges from accepting fiduciary appointments, unless it is for a family member and does not interfere with judicial duties. Rule 2-3.8(a). Here, the family member exception to the rule applies to Hilton serving as a fiduciary trustee and personal representative for the estate of Decedent, who was his father-in-law. In addition, the estate is being litigated in a different circuit, the City of St. Louis. We see no impropriety meriting Hilton's resignation as trustee or personal representative due to his employment as a judge.

12

opposed to requiring either respondent to file a claim to assert their rights. *See Morrison*, 461 S.W.2d at 850. No facts have been presented that would support an argument he has failed to follow the terms of the trust instrument.

As to claims of any deficiency regarding DU in the February 21 Order, "voluntary findings of fact such as those made in this case are not reviewable and present no question for review other than as a general finding, and a defendant may not on appeal assign as error a specific finding of fact or conclusion of law, or the lack thereof, when such findings were not made at the request of one of the parties." *Key v. Gregory*, 553 S.W.2d 329, 333 (Mo. App. 1977) (citing *Conley v. Crown Coach Co.*, 159 S.W.2d 281, 285(8) (Mo. 1942), and *Swetnam v. U.S. By-Products Corp.*, 510 S.W.2d 829, 830(1) (Mo. App.1974)). Moreover, "'all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached,'" and "[w]e will affirm the trial court's judgment on any basis supported by the record." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 828 (Mo. App. W.D. 2012) (*quoting Hirsch v. Ebinger*, 334 S.W.3d 695, 697 (Mo. App. E.D. 2011)). Furthermore, appellate courts are "primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result." *Rouner v. Wise*, 446 S.W.3d 242, 249 (Mo. banc 2014) (*quoting Business Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999)). To that end, a judgment must be "affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Id.*, quoting *American Eagle Waste Indus., LLC v. St. Louis County,* 379 S.W.3d 813, 829 (Mo. banc 2012).

The February 21 Order excluded details regarding DU's pleadings; however, we find the trial court's reference to only Weber's Exhibit 3 simply omitted DU's Exhibit 1, which is

essentially the same as Weber's request for the appointment of a special fiduciary. The February 21 Order referred to both Weber and DU, who filed separate verified petitions on September 7 for an interlocutory determination of the forfeiture clause. The probate court concluded the request for a special fiduciary violated the no-contest clause and applied to both respondents because it was "directly in opposition to the language of the [Revocable Trust]" and "seek[s] to interfere with, revoke, and nullify specific language in said Trust." To hold one party's request for a special fiduciary results in forfeiture but not the other party's equivalent request in a different form would produce an absurd result.

Weber's Point II and DU's Point I are denied. Accordingly, we affirm the trial court's ruling that the request for the appointment of a special fiduciary violates the Revocable Trust's no-contest clause with the clarification that the February 21 Order applies to both Weber and DU.

### Conclusion

The judgment of the trial court is reversed in part and affirmed in part. We reverse the February 21 Order with directions the trial court enter an order that the request for an accounting does not violate the Revocable Trust's no-contest clause. Further, we affirm the trial court's ruling that the request for the appointment of a special fiduciary violates the no-contest clause with the clarification that the February 21 Order applies to both Weber and DU.

_____
Lisa P. Page, Presiding Judge

Kurt S. Odenwald and
Thom C. Clark, II, J. concur.

14